930 A.2d 1264

COMMONWEALTH of Pennsylvania, Appellee

v.

Tony L. BENNETT, Appellant.

Supreme Court of Pennsylvania.

Submitted Jan. 19, 2006.

Decided Aug. 23, 2007.

384

Mitchell S. Strutin, Philadelphia, for Tony L. Bennett.

Hugh J. Burns, Jr., Philadelphia District Attorney's Office, Philadelphia, for Commonwealth of Pennsylvania.

Before CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN, FITZGERALD, JJ.

## *OPINION*

Chief Justice CAPPY.

The issue before the Court is whether Appellant is entitled to reinstatement of his Post Conviction Relief Act ("PCRA")[1] appeal rights *nunc pro tunc* in a second PCRA petition, filed more than one year after the date his judgment of sentence became final, when his original PCRA appeal was dismissed because of PCRA counsel's failure to file a brief. The Superior Court quashed Appellant's appeal as untimely. For the following reasons, the order of the Superior Court is vacated

---

1. 42 Pa.C.S. § 9541 *et seq.*

and this matter is remanded to the PCRA court for further proceedings consistent with this opinion.

The relevant facts are as follows: Appellant and four accomplices, Kevin Wyatt, Paul Johnson, Michael Mayo, and Kecia Ray, robbed a jewelry store in 1990. During the robbery, a salesperson was shot to death. Appellant supplied the gun, but did not enter the store, remaining in the getaway car with Wyatt. Mayo and Ray pled guilty to murder. Appellant, Wyatt, and Johnson were jointly tried for murder and related crimes in 1993. Following a jury trial, Appellant, Wyatt, and Johnson were convicted of first-degree murder and the related crimes. On June 1, 1993, the trial court sentenced Appellant to life in prison on the murder charge, and to an aggregate sentence of twenty to forty years in prison on the remaining charges. Appellant did not file a direct appeal to the Superior Court. Therefore, his judgment of sentence became final 30 days after June 1, 1993. *See* 42 Pa.C.S. § 9545(b)(3).

Appellant filed a timely *pro se* PCRA petition on April 5, 1995 under the prior version of the PCRA and the PCRA court appointed counsel to represent him.[2] Appellant then filed an amended PCRA petition on April 9, 1997. Appellant listed multiple claims of error, including that trial counsel erred in failing to object to the trial court's instructions relating to accomplice liability. *See* Amended Petition under the Post Conviction Hearing Act, 4/9/1997, at 2. The amended petition also included a claim that trial counsel was ineffective for failing to file a notice of appeal following his conviction. *Id.* On February 19, 1999, the PCRA court dismissed Appellant's PCRA petition for lack of merit. In the opinion that followed, the PCRA court explained that Appellant was not entitled to reinstatement of his direct appeal rights, since Appellant "did not allege let alone prove that he requested counsel to file a direct appeal on his behalf." PCRA court slip opinion, 10/6/1999, at 4.

PCRA counsel did not file an appeal on Appellant's behalf, but Appellant filed a timely *pro se* appeal in the Superior

---

2. The prior version of the PCRA did not place time limits on the filing of petitions.

Court. In his *pro se* statement of matters complained of on appeal under Pa.R.A.P.1925(b), Appellant raised the claim related to trial counsel's failure to challenge the trial court's instructions as to accomplice liability.[3] *See* Statement of Questions Raised on Appeal, 3/19/1999.

On April 7, 1999, the PCRA court appointed prior trial counsel, whose stewardship was at issue on collateral review, to represent Appellant on his PCRA appeal. On August 14, 2000, the Superior Court dismissed Appellant's appeal without prejudice for counsel's failure to file a brief. The Superior Court did not retain jurisdiction and Appellant did not seek review in this Court.

On October 27, 2000, Appellant filed a second *pro se* PCRA petition, requesting reinstatement of his PCRA appeal rights *nunc pro tunc* and claiming that all prior counsel were ineffective. On September 28, 2001, the PCRA court granted Appellant's PCRA petition, restoring his right to file an appeal *nunc pro tunc* from the February 19, 1999 order dismissing his first PCRA petition. New counsel was appointed and on December 14, 2001, Appellant filed a PCRA appeal *nunc pro tunc* in the Superior Court from the PCRA court's February 19th order dismissing his first PCRA petition. The Superior Court quashed Appellant's appeal, concluding that Appellant's second PCRA petition, from which his appellate rights were reinstated *nunc pro tunc,* was untimely and the PCRA court therefore had no jurisdiction to grant relief. *Commonwealth v. Bennett,* 842 A.2d 953 (Pa.Super.Ct.2004).

This Court granted allowance of appeal to consider whether the Superior Court erred in quashing Appellant's appeal.

It is well settled that the PCRA provides the "sole means for obtaining collateral relief" on claims cognizable under the PCRA. 42 Pa.C.S. § 9542; *see also Commonwealth v. Chester,*

**3.** Appellant's preservation of this issue throughout the proceedings involving his first PCRA petition is significant because the Superior Court ultimately granted a new trial as to the murder charge for co-defendant Wyatt due to the trial court's erroneous accomplice liability instruction. *Commonwealth v. Wyatt,* 2050 EDA 1999 (Pa.Super.Ct., July 16, 2001) (unpublished memorandum).

557 Pa. 358, 733 A.2d 1242, 1250 (1999) (offering that the PCRA subsumes the remedy of habeas corpus with respect to remedies offered under PCRA). To this end, the PCRA envisions that persons convicted of a crime be permitted one review of their collateral claims. 42 Pa.C.S. § 9543; *Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638, 643 (1998) (stating that the purpose of the PCRA is "to provide a reasonable opportunity for those who have been wrongfully convicted to demonstrate the injustice of their convictions"); *cf. Commonwealth v. Judge*, 591 Pa. 126, 916 A.2d 511, 520 (2007) (quoting same language from *Peterkin* ). These claims are most often raised as claims of ineffectiveness, but can take on a myriad of forms. *See* 42 Pa.C.S. § 9543(a)(2). The PCRA process includes appellate review of the claims.

 Under 42 Pa.C.S. § 9545, as amended in 1995, any PCRA petition, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final. This limitation is jurisdictional in nature. *See Peterkin*, 722 A.2d at 641. As we have previously explained, "jurisdictional time limits go to a court's right or competency to adjudicate a controversy." *Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214, 222 (1999). Jurisdictional time limitations are not subject to equitable exceptions and a court has no authority to extend them except as the statute permits. *Id.* By placing strict time limitations on the process, it is clear that the Legislature intended that there be finality to the collateral review process. *See Peterkin, supra.*

This preference for finality, however, is tempered by the insertion of three exceptions to the one-year time limitation at subsections (b)(1)(i)-(iii). These exceptions extend the one-year time limitation under limited circumstances, reflecting that the Legislature also recognized that situations might arise when the one-year time limitation must yield. The exceptions are triggered by an event that occurs outside the control of the petitioner, including when "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due dili-

gence." 42 Pa.C.S. § 9545(b)(1)(ii).[4] The PCRA limits the reach of the exceptions by providing that the exceptions must be pled within sixty days of the date the claim could have been presented. 42 Pa.C.S. § 9545(b)(2).

With this framework in mind, we now turn to Appellant's arguments. Appellant urges this court to consider his petition under the exception to the one-year time limitation set forth in subsection (b)(1)(ii). As we have not previously had the opportunity to consider the exception in circumstances like Appellant's, we will turn to the construction of 42 Pa.C.S. § 9545(b)(1)(ii).

■ As a threshold matter, we must examine whether Appellant waived application of the exception by not raising it in his second or second amended PCRA petition. Instead, he raised it for the first time before this Court. Normally, the PCRA requires a petitioner to allege and prove an exception to the one-year time limitation in his petition. 42 Pa.C.S. § 9545(b); *see also Commonwealth v. Wharton*, 584 Pa. 576, 886 A.2d 1120 (2005). In this case, however, at the time Appellant filed his PCRA petition, the Superior Court followed the "extension theory." Under the "extension theory," the Superior Court construed in limited circumstances an untimely, serial PCRA petition as if it were an "extension" of a timely, but previously dismissed, first PCRA petition. *Commonwealth v. Leasa*, 759 A.2d 941 (Pa.Super.2000); *Commonwealth v. Peterson*, 756 A.2d 687 (Pa.Super.2000). The practice was common in cases like Appellant's, in which an appeal was taken from the denial of the first petition, but the Superior Court dismissed the appeal without prejudice when PCRA counsel failed to file a brief. Appellant relied on and took advantage of this process by alleging and proving the extension theory in his original and amended petitions. The

4. The other two alternatives are when the petition alleges and the petitioner proves that: the failure to raise the issue was a result of governmental interference or the right asserted was a constitutional right that was recognized by this Court or the United States Supreme Court and declared retroactive. 42 Pa.C.S. § 9545(b)(i), (iii).

PCRA court agreed that Appellant was entitled to relief and reinstated his appellate rights *nunc pro tunc*.

While Appellant's appeal was pending before the Superior Court, the extension theory was explicitly rejected by this Court in *Commonwealth v. Robinson*, 575 Pa. 500, 837 A.2d 1157 (2003). Accordingly, the Superior Court dismissed Appellant's second petition for lack of jurisdiction under *Robinson*. Thus, the question is whether Appellant's failure to raise the exception at subsection (b)(1)(ii) at the time he filed this second petition precludes this Court from applying it to his case.

This Court has been faced with this type of question in the context of the PCRA on more than one occasion and we have allowed PCRA petitioners some leeway in the preservation of claims in their petitions when we determined that the circumstances demanded it. For example, we provided for liberal amendment of PCRA petitions following our decision in *Commonwealth v. McGill*, 574 Pa. 574, 832 A.2d 1014 (2003), which announced the proper framework for alleging a "layered" ineffective assistance of counsel claim. After setting forth the framework for alleging "layered" claims, we recognized that "we [had] not been clear as to exactly what is required of a PCRA petitioner seeking to plead, present, and ultimately prove a layered claim of counsel ineffectiveness." *Id.* at 1024. Accordingly, we held that a remand may be appropriate to give the petitioner another opportunity to properly plead his claim by conforming his petition to the *McGill* requirements consistent with Pa.R.Crim.P. 905. *Id.*

Similarly, in *Commonwealth v. Hernandez*, 572 Pa. 477, 817 A.2d 479 (2003), this Court entertained a preservation question substantially similar to the one raised herein.[5] Counsel representing Hernandez had failed to file a Rule 1925(b) Statement on direct appeal. The Superior Court dismissed the appeal and within eight months, Hernandez filed a Petition for Leave to Appeal *nunc pro tunc* ("NPT petition") with the trial court.

5. While this author concurred in the result in *Hernandez* and wrote separately on the issue discussed herein, the principle of *stare decisis* requires that the decision of the majority be followed here.

At the time, a NPT petition was the accepted filing in order to have appellate rights reinstated *nunc pro tunc*. This process was later deemed unavailable in *Commonwealth v. Lantzy*, 558 Pa. 214, 736 A.2d 564 (1999), wherein we clarified that the appropriate procedure was to file a PCRA petition seeking to have one's appeal rights reinstated *nunc pro tunc*.

The Superior Court did not believe that *Lantzy* required dismissal of Hernandez's claim, since Hernandez had filed his NPT petition before this court's decision in *Lantzy*. Ultimately, however, the court affirmed the judgment of sentence on the basis that Hernandez's claims were without merit. Following the Superior Court's decision, we granted the Commonwealth's petition for allowance of appeal to determine whether it should have reached the merits of Hernandez's NPT petition in light of *Lantzy*.

Rather than rejecting Hernandez's claim under *Lantzy*, we explained that at the time of his petition Hernandez "reasonably relied" on the process utilized by the Superior Court. *Hernandez*, 817 A.2d at 483–84. Furthermore, we noted that Hernandez was "caught in a jurisdictional trap of [the Superior Court's] making." *Id.* at 483. The Superior Court had set up a process for review of claims like Hernandez's and Hernandez had followed that procedure. Accordingly, we affirmed the Superior Court's decision with regard to its review of the NPT petition, but expressed no opinion on the underlying merits, since Hernandez had not filed a petition for allowance of appeal.

In this case, declining to entertain Appellant's petition for his failure to plead subsection (b)(1)(ii) at the time he filed his instant petition, would be inconsistent with the spirit of *McGill* and *Hernandez*.[6] In this case, the Superior Court utilized a

6. At the very least, it would appear that Appellant would be entitled to a remand to give him the opportunity to amend his petition to include this claim following our decision in *Robinson*. *McGill supra*. A remand would also be consistent with our decision in *Commonwealth v. Williams*, 566 Pa. 553, 782 A.2d 517 (2001), in which we provided for a remand in instances when the PCRA court did not provide a capital defendant with adequate pre-dismissal notice of its reasons for dismissal as required by Pa.R.Crim.P. 1509(c) (which is currently Rule 905).

process for review of claims like Appellant's, and Appellant followed that process. As occurred in *Hernandez*, while Appellant's petition was pending, intervening case law from this Court altered that process. Like the conclusion in *Hernandez*, we will not deny Appellant the opportunity to demonstrate that he is entitled to application of the (b)(1)(ii) exception as Appellant "reasonably relied" on the process set up by the Superior Court, which afforded petitioners *nunc pro tunc* relief under the "extension theory." Accordingly, we conclude that we can review whether Appellant's claim meets the requirements of subsection (b)(1)(ii) and now turn to the construction of that subsection.

The proper interpretation and scope of subsection (b)(1)(ii) is one of statutory construction. As such, we rely upon the Statutory Construction Act ("Act") for guidance. *See* 1 Pa. C.S. § 1501 *et seq.* The goal of statutory construction is to ascertain the Legislature's intent. 1 Pa.C.S. § 1921(a). To this end, every statute shall be construed, if possible, to give effect to all its provisions. *Id.* When the words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of following its spirit. 1 Pa. C.S. § 1921(b). Furthermore, we must construe the provisions of the PCRA liberally "to effect their objects and to promote justice." *See* 1 Pa.C.S. § 1928(c).[7]

The PCRA court properly followed a *Williams*-type process in *Wharton* when it issued a notice of intent to dismiss Wharton's petition, which was filed post-*Robinson*, on the basis that the petition was untimely and failed to assert an exception to the one-year time requirement. 886 A.2d at 1123. Consistent with *Williams*, Wharton was then given 20 days to amend his petition to include an exception to the one-year time requirement. Although ultimately, Wharton chose not to amend the petition and therefore, it was dismissed for lack of jurisdiction, it is instructive that the PCRA court gave him the opportunity to amend his petition under Rule 905. In this case, because of the timing of this matter and the fact that the PCRA court automatically reinstated his appellate rights, Appellant has never been given the opportunity to amend his pleadings consistent with *Williams*.

7. Section 1928 addresses which statutes should be liberally or strictly construed. Subsection (b) enumerates the provisions that should be strictly construed, while subsection (c) provides that "all other provisions" should be liberally construed. While subsection (b) includes "penal provisions" as part of its enumerated list, the provisions con-

■ The text of the relevant subsection provides that "the facts upon which the claim is predicated were unknown to petitioner and could not have been ascertained by due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). We have repeatedly referred to this subsection as the "after-discovered evidence" exception to the one-year jurisdictional time limitation. *See Peterkin*, 722 A.2d at 643. This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of "after-discovered evidence."[8] Rather, it simply requires petitioner to allege and prove that there were "facts" that were "unknown" to him and that he exercised "due diligence." In fact, when the Legislature intended a claim of "after-discovered evidence" to be recognized under the PCRA, it has done so by language closely tracking the after-discovered evidence requirements. *See* 42 Pa.C.S. § 9543(b)(vi) (requiring that the evidence be "exculpatory" and "would have changed the outcome of the trial . . . .").

■ By imprecisely referring to this subsection as the "after-discovered evidence" exception, we have ignored its plain language. Indeed, by employing the misnomer, we have erroneously engrafted *Brady*[9]-like considerations into our

tained in the PCRA are not a "penal provision" to be strictly construed, as it is merely the codification of the writ of habeas corpus. And, habeas corpus is characterized as a civil remedy. *See Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *see also Commonwealth ex rel. Marshall v. Gedney*, 456 Pa. 570, 321 A.2d 641, 643 (1974) (rejecting appellant's argument that appellate jurisdiction in extradition-related cases should be exercise under the related "criminal proceedings" provision).

8. *See, e.g., Commonwealth v. Small*, 559 Pa. 423, 741 A.2d 666, 673 (1999) (the requirements of an after discovered evidence claim include, in relevant part, that the new evidence is not to be used for merely cumulative or impeachment purposes, i.e., that it is exculpatory; and that the new evidence is of such a nature that it would compel a different outcome if it had been introduced at trial).

9. This refers to a claim brought under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which challenges the Commonwealth's failure to produce material evidence. Specifically, a *Brady* claim requires a petitioner to show, "(1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant; and (3) the suppression prejudiced the defen-

analysis of subsection (b)(1)(ii) on more than one occasion. For example, in *Commonwealth v. Johnson,* 580 Pa. 594, 863 A.2d 423 (2004), appellant argued that the Commonwealth violated *Brady* by withholding impeachment evidence and that this claim was cognizable under subsection (b)(1)(ii). We concluded that appellant could not establish that his *Brady* claim had merit, since the information could have been uncovered before or during trial. We further stated, "as we conclude that appellant's underlying *Brady* claim is without merit, we necessarily also conclude that appellant has failed to show that his petition falls within any of the exceptions to the PCRA's time requirements." *Id.* at 425–26; *see also Commonwealth v. Breakiron,* 566 Pa. 323, 781 A.2d 94, 98 (2001). This conclusion conflated the two concepts as subsection (b)(1)(ii) does not contain the same requirements as a *Brady* claim.

The "after discovered evidence" misnomer and our suggestion that there is some overlap between the doctrine and § 9545(b)(1)(ii) have created additional problems in the Superior Court. In one case, the Superior Court specifically held that a petitioner asserting the exception provided in 42 Pa.C.S. § 9545(b)(1)(ii) had to meet the statutory requirements and, *in addition,* show that these new facts constituted " 'exculpatory evidence' that 'would have changed the outcome of the trial if it had been introduced.' " *Commonwealth v. Palmer,* 814 A.2d 700 (Pa.Super.2002) (citing 42 Pa.C.S. § 9543(a)(2)(vi) and *Commonwealth v. Yarris,* 557 Pa. 12, 731 A.2d 581, 588–91 (1999)); *see also Commonwealth v. Baker,* 828 A.2d 1146, 1147 (Pa.Super.2003) (following *Palmer* ). While the additional requirements are consistent with a *Brady* claim, *see infra* n. 8, none of these requirements exist in § 9545(b)(1)(ii). Similarly, in *Commonwealth v. Holmes,* 905 A.2d 507 (Pa.Super.2006), the Superior Court stated that the petitioner had asserted the "after-discovered evidence exception to the PCRA time-bar" under §§ 9545(b)(1)(ii) and § 9545(b)(2). *Id.* at 510. The court, however, then relied on a case decided under

dant." *Commonwealth v. Carson,* 590 Pa. 501, 913 A.2d 220, 244 (2006).

§ 9543(a)(2)(vi) to justify its holding that the petitioner had to show that the evidence was not cumulative nor being used solely to impeach credibility, and that the evidence would likely compel a different verdict. *Id.* at 511, citing *Commonwealth v. D'Amato*, 579 Pa. 490, 856 A.2d 806, 823 (2004).[10]

Any confusion created by the mislabeling of this subsection, however, should have been dispelled by our decision in *Commonwealth v. Lambert*, 584 Pa. 461, 884 A.2d 848 (2005). In *Lambert*, the appellant raised a number of *Brady* claims and alleged that the court had jurisdiction over his claims under subsection (b)(1)(ii). The Commonwealth urged us to follow a similar analysis to that set forth in *Johnson* arguing that appellant must establish a meritorious *Brady* claim in order to fall within an exception set forth in subsections (b)(1)(i)-(iii). In rejecting the Commonwealth's argument, we made clear that the exception set forth in subsection (b)(1)(ii) does not require any merits analysis of the underlying claim. Rather, "the exception merely requires that the 'facts' upon which such a claim is predicated must not have been known to appellant, nor could they have been ascertained by due diligence." *Lambert*, 884 A.2d at 852. Therefore, our opinion in *Lambert* indicated that the plain language of subsection (b)(1)(ii) is not so narrow as to limit itself to only claims involving "after-discovered evidence." Rather, subsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) "the *facts* upon which the claim was predicated were *unknown*" and 2) "could not have been ascertained by the exercise of *due diligence*." 42 Pa.C.S. § 9545(b)(1)(ii) (emphasis added). If the petitioner alleges and proves these two components, then

**10.** While the Superior Court cites our decisions in *Yarris* and *D'Amato*, neither of those decisions support the proposition for which they are cited. Specifically, the relevant portion of *Yarris* correctly analyzes subsection (b)(1)(ii) and concludes that the claim fails because the appellant did not make a sufficient proffer of why it took so long to present the claims, and therefore, did not show that he acted with due diligence. 731 A.2d at 590. Furthermore, any reliance on *D'Amato* is misplaced, since the "after-discovered" analysis discussed therein related to § 9543(b)(vi), which, as discussed above, tracks the language of the after discovered evidence exception.

the PCRA court has jurisdiction over the claim under this subsection. *See Lambert, supra.*

In this case, by invoking the exception at subsection (b)(1)(ii), Appellant alleges that he did not know that his trial counsel was appointed to represent him in his PCRA appeal until much later in the process. Likewise, he contends that he never received a copy of the Superior Court's order dismissing his appeal. Rather, he alleges that he attempted to find out the status of his appeal from the PCRA and Superior Courts. Ultimately, he contends that he did not know of PCRA appellate counsel's failure to file an appellate brief until October 4, 2000, when he received a letter from the Superior Court explaining that his appeal was dismissed due to PCRA counsel's failure to file a brief. Therefore, Appellant has alleged that there were facts that were unknown to him. Additionally, Appellant has provided a description of the steps he took to ascertain the status of his case. These steps included writing to the PCRA court and the Superior Court. Accordingly, Appellant alleges that he exercised due diligence in ascertaining those facts.[11] Appellant's allegations, if proven, fall within the plain language of subsection (b)(1)(ii).

 We must acknowledge, however, that this is not our first time interpreting this subsection. In *Commonwealth v. Gamboa–Taylor*, 562 Pa. 70, 753 A.2d 780, 785 (2000), we held that an allegation of PCRA counsel's ineffectiveness could not be invoked as a newly-discovered "fact" for purposes of this subsection. *See also Commonwealth v. Pursell*, 561 Pa. 214, 749 A.2d 911, 916 (2000). We have steadfastly adhered to this principle. *Commonwealth v. Crews*, 581 Pa. 45, 863 A.2d 498 (2004); *Commonwealth v. Johnson*, 580 Pa. 594, 863 A.2d 423 (2004); *Commonwealth v. Howard*, 567 Pa. 481, 788 A.2d 351

11. The PCRA also provides that any exception set forth in subsection (b)(1)(ii) must be plead within 60 days of when it "could have been presented." 42 Pa.C.S. § 9545(b)(2). In this instance, we are content that Appellant has alleged that his petition was filed within 60 days of the date it could have been presented, since it was filed less than 25 days after when Appellant found out that the Superior Court dismissed his first PCRA appeal.

(2002). Accordingly, we must consider whether Appellant's claim is precluded by this line of reasoning.

In *Gamboa–Taylor* and subsequent cases, we addressed situations when PCRA counsel had allegedly ineffectively narrowed the class of claims raised by not including all of the viable claims in the first petition. In such instances, we concluded that by allowing the claim to go forward "the timeliness requirements crafted by the legislature would thus effectively be eviscerated by any petitioner who was willing to file serial PCRA petitions alleging ineffective assistance of counsel." *Howard*, 788 A.2d at 355 (citing *Gamboa–Taylor supra*). Thus, we firmly rejected any such attempts "to circumvent the one-year time limitation" via claims of PCRA counsel ineffectiveness. *Id.* This interpretation is consistent with the federal constitutional standard guiding claims of appellate counsel's ineffectiveness, which allow counsel to choose among nonfrivolous claims and select the best issues for purposes of appeal.

Those cases, however, have no relevance when the claim emanates from the complete denial of counsel. Rather, in such instances, the United States Supreme Court mandates the presumption of prejudice because the process itself has been rendered "presumptively unreliable" under the Sixth Amendment. *See Roe v. Flores–Ortega*, 528 U.S. 470, 481–82, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (*quoting United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). The Court has extended the presumptively prejudicial reasoning to the failure to appoint counsel for purposes of direct appeal. *Penson v. Ohio*, 488 U.S. 75, 88, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). Likewise, the Court has declared that counsel's failure to file a requested notice of appeal was presumptively prejudicial. *Flores–Ortega*, 528 U.S. at 483, 120 S.Ct. 1029.

Consistent with this jurisprudence, this Court has recognized a distinction between situations in which counsel has narrowed the ambit of appellate review by the claims he has raised or foregone versus those instances, as here, in which counsel has failed to file an appeal at all. *Commonwealth v.*

*Halley,* 582 Pa. 164, 870 A.2d 795 (2005); *Commonwealth v. Lantzy,* 558 Pa. 214, 736 A.2d 564 (1999). To this end, we have repeatedly indicated that the failure to file a requested direct appeal or a 1925(b) statement in support thereof is the functional equivalent of having no counsel at all. *Halley; Lantzy.* In such instances, the deprivation *requires* a finding of prejudice. *Id.* Accordingly, following our prior case law, we hold that the analysis set forth in *Gamboa–Taylor* and subsequent case law does not apply to situations when counsel abandons his client for purposes of appeal. Additionally, allowing such claims to go forward would not eviscerate the time requirements crafted by the Legislature. Rather, subsection (b)(1)(ii) is a limited extension of the one-year time requirement under circumstances when a petitioner has not had the review to which he was entitled due to a circumstance that was beyond his control.

Furthermore, we believe that the Statutory Construction Act requires such a result. In addition to requiring us to interpret the language plainly, the Act requires that we employ the presumption that the General Assembly does not intend to violate the United States or Pennsylvania Constitutions, *see* 1 Pa.C.S. § 1922. While we have declared the PCRA to be constitutional generally, *see Peterkin,* this does not mean that it is constitutional as applied to all petitioners.

 There is no federal constitutional mandate requiring collateral review. *Pennsylvania v. Finley,* 481 U.S. 551, 556–57, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). It is not part of the criminal process, and is, in fact, civil in nature. *Id.* Therefore, under the Fourteenth Amendment to the United States Constitution, the procedural due process protections are less stringent than for purposes of either a criminal trial or direct appeal. *Id.* Nevertheless, due process requires that the post conviction process be fundamentally fair. *Id.; see also Commonwealth v. Haag,* 570 Pa. 289, 809 A.2d 271, 283 (2002). Thus, petitioners must be given the opportunity for the presentation of claims at a meaningful time and in a meaningful manner. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 437, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

As part of the PCRA process, indigent petitioners may apply for the assistance of counsel for purposes of their first PCRA petition. We have held this rule to be absolute inasmuch as we have concluded that a petitioner need not establish that his petition is timely before he or she is entitled to the appointment of counsel. *See, e.g., Commonwealth v. Smith*, 572 Pa. 572, 818 A.2d 494 (2003). To this end, it can be assumed that the PCRA court will appoint appropriate counsel, i.e., counsel that can and will raise potentially meritorious claims. In this same vein, while the performance of PCRA counsel is not necessarily scrutinized under the Sixth Amendment, the performance of counsel must comply with some minimum norms, which would include not abandoning a client for purposes of appeal. *See e.g., Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998); *see also* Pa.R.Crim.P. 904(F)(2) (providing for the appointment of counsel *throughout* post-conviction proceedings including any appeal). Accordingly, extending the decision in *Gamboa–Taylor* to situations when counsel abandons his client on direct appeal would raise serious questions of whether the process is "fundamentally fair" as applied to a certain class of petitioners.

■ In this case, Appellant alleges that his counsel abandoned him by failing to file an appellate brief. The record establishes that Appellant filed a *pro se* statement under Pa.R.A.P.1925(b) indicating a desire to appeal. It was then that counsel was appointed, but failed to file anything with the Superior Court. Accordingly, we hold that Appellant has made sufficient allegations that counsel abandoned him for purposes of his first PCRA appeal by failing to file an appellate brief and that Appellant's relief under subsection (b)(1)(ii) is not controlled by the *Gamboa–Taylor* line of case law.

Thus, as discussed previously, Appellant has made sufficient allegations to invoke subsection (b)(1)(ii). Appellant alleges that he did not receive the review to which he was entitled through no fault of his own. On appeal, Appellant was assigned counsel who could not raise the ineffectiveness claims he wanted to pursue. *See Commonwealth v. Appel*, 689 A.2d 891 (Pa.1997) (holding that counsel cannot raise his or her own

ineffectiveness). Such an infirmity was compounded when counsel abandoned Appellant by failing to file an appellate brief in flagrant violation of Pa.R.Crim.P. 904(F)(2). In such an instance, Appellant must be given the opportunity to seek the review to which he or she was entitled.[12]

Having concluded that Appellant's allegations bring his claim within the ambit of subsection (b)(1)(ii), he must still prove that it meets the requirements therein. Under subsection (b)(1)(ii), he must also prove that the facts were "unknown" to him and that he could not uncover them with the exercise of "due diligence." Such questions require further fact-finding and the PCRA court, acting as fact finder, should determine whether Appellant met the "proof" requirement under 42 Pa.C.S. § 9545(b)(1)(ii).

The dissent by Justice Eakin points out that Appellant cannot establish that the facts were "unknown" to him as a matter of law under this court's decision in *Chester*, 557 Pa. 358, 733 A.2d 1242.

In *Chester*, petitioner filed a PCRA petition nearly 10 years after his conviction and argued that he had "after discovered evidence" that his trial counsel was arrested for driving under the influence only days after entering his appearance on behalf of petitioner. Petitioner alleged that the arrest created a conflict of interest. In considering the petitioner's claim, we explained that just because the petitioner did not discover the evidence did not mean it was "unknown" to him for purposes of § 9545(b)(1)(ii). Instead, we held that information is not unknown to a PCRA petitioner when the information was a matter of public record. *Id.* at 523, 733 A.2d 1242.

12. Many of the concerns raised in this case have been alleviated by the fact that the Superior Court has altered its practice and no longer dismisses such appeals "without prejudice" due to counsel's failure to file a brief. Rather, the court retains jurisdiction over the matter and remands for the appointment of new counsel. Accordingly, the situation raised herein should not occur with frequency.

This process, however, is informal. We take this opportunity to recommend that the Criminal Procedural Rules Committee and Appellate Court Procedural Rules Committee review the rules to determine whether the Superior Court's informal procedure should be formalized.

The dissent concludes that *Chester* should control the instant case, since the Superior Court filed its order dismissing Appellant's appeal on August 14, 2000. An order dismissing an appeal is a matter of public record, and therefore, the dissent would hold that Appellant cannot meet § 9545(b)(1)(ii). Respectfully, we disagree since implicit in the decision in *Chester* was the recognition that the public record could be accessed by the defendant.

While the dissenting opinion is attractive in its simplicity, it does not give due consideration to the circumstances the instant case raises. The August 14th order was a matter of "public record" only in the broadest sense. Such orders are not sent directly to the prisoner. Rather, counsel is sent the notice on the assumption that counsel will inform his client of the court's action. In a case such as the instant one, it is illogical to believe that a counsel that abandons his or her client for a requested appeal will inform his client that his case has been dismissed because of his own failures. More importantly, in light of the fact that counsel abandoned Appellant, we know of no other way in which a prisoner could access the "public record." [13] Rather, we believe this situation is sufficiently distinct from the situation in *Chester*, since in this case, the matter of "public record" does not appear to have been within Appellant's access.[14]

Accordingly, this matter is remanded to the Superior Court for remand to the PCRA court for further consideration consistent with this opinion.[15,16]

13. Of course, the PCRA court can examine this matter on remand.

14. *Chester* involved a "public record" extant at the time of trial during which counsel was actively representing his client. Clearly, that is distinct from a situation in which counsel has abandoned his client and yet counsel is the only way the client would have to access the information.

15. On a final note, we see no reason to appoint a new trial judge to these proceedings on remand, since there is nothing to suggest that the appointment of defense counsel as PCRA appellate counsel was anything more than an oversight. *See, e.g., Commonwealth v. Whitmore,* 590 Pa. 376, 912 A.2d 827 (2006).

16. Finally, our decision in *Robinson* and subsequent case law, have no relevance to this case, since Robinson did not allege any of the excep-

402

Justice BAER, Justice BALDWIN and Justice FITZGERALD join the opinion.

Justice SAYLOR files a dissenting opinion in which Justice CASTILLE joins.

Justice EAKIN files a dissenting opinion in which Justice CASTILLE joins.

Justice SAYLOR, Dissenting.

The majority repeatedly invokes the plain meaning of Section 9545(b)(1)(ii) of the Post Conviction Relief Act, 42 Pa.C.S. § 9545(b)(1)(ii) (providing for an exception to the PCRA's one-year time bar when "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence"), in support of its conclusion that the language of the statute affords the courts jurisdiction to review an otherwise untimely post-conviction claim whenever a post-conviction petitioner alleges that there were some facts that were unknown to him and that he exercised due diligence. *See, e.g.,* Majority Opinion, at 1270, 1271. The primary difficulty with the majority's analysis in this regard is that a consistent plain-meaning approach to Section 9545(b)(1)(ii) should also subsume an equally straight-forward approach to the words that the statute employs, including the word "claim."

Section 9543 of the PCRA, entitled "Eligibility for relief," covers the range of claims that may give rise to relief under the statute. Section 9543, on its plain terms, is written to require, as the operative element of each cognizable claim, pleading and proof *"[t]hat the conviction or sentence resulted from"*: 1) a constitutional violation which so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place (or that yielded "prejudice"); 2) ineffective assistance of counsel yielding prejudice;

tions to the one-year time limitation in his PCRA petition or before this Court. *Robinson,* 575 Pa. 500, 837 A.2d 1157 (2003). Rather, this case presents the first opportunity to examine the contours of subsection (b)(1)(ii) under circumstances when PCRA counsel has abandoned his client.

3) an unlawfully induced plea of guilt where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent; 4) improper obstruction by government officials of the petitioner's right of appeal, in certain circumstances; 5) the unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome if it had been introduced; 6) the imposition of a sentence greater than the lawful maximum; or 7) a proceeding in a tribunal without jurisdiction. 42 Pa.C.S. § 9543(a)(2) (emphasis added).

It is apparent that Appellant's allegation of ineffective assistance of his post-conviction counsel for failure to file a brief does not qualify as a "claim" that is cognizable under the express language of the PCRA, both because Appellant's conviction and sentence did not result from such ineffectiveness, and because the asserted prejudice does not go directly to the truth-determining process, as the language of the PCRA contemplates. Correspondingly, as a matter of a pure plain-meaning reading of the statute, Appellant's assertion of ineffectiveness in the post-conviction appeal process also is not the subject of Section 9545(b)(1)(ii)'s exception to the one-year time bar, which clearly contemplates a "claim," of a type such as would be cognizable under the claim provision of the PCRA. 42 Pa.C.S. § 9545(b)(1)(ii).

I recognize that this type plain-meaning approach to Section 9543 was adopted by the Superior Court in *Commonwealth v. Petroski*, 695 A.2d 844 (Pa.Super.1997), and was overturned by our decisions in *Commonwealth v. Chester*, 557 Pa. 358, 733 A.2d 1242 (1999), and *Commonwealth v. Lantzy*, 558 Pa. 214, 736 A.2d 564 (1999). The problem that we encountered in *Chester* and *Lantzy* stems from the fact that the Post Conviction Relief Act subsumes incompatible objectives. On the one hand, the Legislature expressly intended for all forms of post-conviction relief, including relief available under traditional habeas corpus doctrine, to be included within the PCRA's jurisdictional and procedural framework. *See* 42 Pa.C.S. § 9542. On the other hand, under the plain language of the

PCRA, the statute narrows the categories of claims as to which relief is available, excluding, for example, a claim of ineffective assistance of counsel for failure to file a direct appeal (or, more directly relevant to the present case, ineffective assistance of PCRA counsel for failure to file a brief). *See* 42 Pa.C.S. § 9543(a)(2). The two objectives cannot be wholly reconciled, because claims cognizable on traditional habeas corpus review may not be substantively foreclosed by legislation, since the Pennsylvania Constitution provides, with limited exceptions not applicable in this context, that the privilege of the writ of habeas corpus "shall not be suspended." PA. CONST., art. I, § 14. *See generally Lantzy,* 558 Pa. at 222–23, 736 A.2d at 569. Thus, the Court was presented with a choice of sanctioning a bifurcated system of post-conviction review (in which claims expressly covered by the PCRA would be administered under the jurisdictional and procedural framework of the statute, but the balance of claims not covered by the statute but cognizable under traditional habeas corpus review would be resolved under the common law) and the prevailing construction that harmonized the incompatible objectives of the PCRA by channeling the broader category of claims into the general jurisdictional and procedural framework of the PCRA. *See Lantzy,* 558 Pa. at 222–23 & n. 4, 736 A.2d at 569–70 & n. 4.

My point here is that, in light of the incompatible objectives of the PCRA, the Court was required to move beyond a plain-meaning interpretation of the "claim" provision of the post-conviction relief statute. Since the subject of Section 9545(b)(1)(ii) exception to the one-year time bar concerns a "claim" under the PCRA, and the majority's construction of that provision subsumes a segment of the broader category of claims sanctioned in *Chester* and *Lantzy,* whatever kind of approach the majority's is, it is not a plain-meaning one.

This is also apparent from other aspects of the majority rationale. Despite revamping the conventional understanding of the legislative intent underlying Section 9545(b)(1)(ii) with the stated purpose of implementing the plain language, *see* Majority Opinion, at 392–95, 930 A.2d at 1270–71, the majority

opinion nonetheless largely approves the effect of the decisions that have held that the Legislature did not intend for derivative allegations of ineffective assistance of counsel to be considered in connection with the Section 9545(b)(1)(ii) exception to the PCRA's one-year time bar. *See id.* at 396–98, 930 A.2d at 1272–73 (citing *Commonwealth v. Gamboa–Taylor,* 562 Pa. 70, 753 A.2d 780 (2000), which had categorically rejected attempts to "interweave concepts of ineffective assistance of counsel and after-discovered evidence as a means of establishing jurisdiction," *id.* at 79–80, 753 A.2d at 785). The majority, however, does not develop why these decisions are any more deserving of respect under its "plain meaning" approach to the statute than those that it displaces.[1] Further, in place of the conventional understanding of Section 9545(b)(i)(ii), the majority substitutes its own, new limiting principle by transporting to the time-bar context a tailored version of the substantive Sixth Amendment principle of structural error, fashioned loosely upon the doctrine as embodied in *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). *See id.* at 396–400, 930 A.2d at 1272–74. None of these turns finds any basis in the statutory language. Indeed, the majority opinion displaces this Court's previous understanding that "a plain reading of the PCRA's timeliness requirements indicates that they are intended to apply to all PCRA petitions, regardless of the nature of the individual claims raised therein." *Commonwealth v. Murray,* 562 Pa. 1, 5, 753 A.2d 201, 202 (2000).[2]

1. The majority opinion indicates that "[w]hen the words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of following its spirit." Majority Opinion, at 392, 930 A.2d at 1270 (citing 1 Pa.C.S. § 1921(b)). Yet, the majority appears to be comfortable with a policy-based construction to support its own limited construction of Section 9545(b)(1)(ii) to restrict it to only a subset of ineffectiveness claims. *See* Majority Opinion, at 396–98, 930 A.2d at 1272–73.

2. The shift in course reflected in the majority's approach, in terms of its decision to apply a modified structural-error analysis in the time-bar context, is highlighted by the fact that no one has anticipated it. Appellant's arguments are centered on advancing the extension theory and seeking an overruling of this Court's decision in *Commonwealth v. Robinson,* 575 Pa. 500, 837 A.2d 1157 (2003), which rejected the extension theory, and the Commonwealth's arguments are responsive to Appellant's. For its part, the Superior Court applied the previous decisions of this Court.

Moving beyond the subject of plain meaning, the majority opinion appears to rest primarily on its conclusion that application of the one-year time bar in Appellant's circumstance represents a due process violation. *See* Majority Opinion, at 396–400, 930 A.2d at 1272–74. Thus, the majority invokes the presumption that the General Assembly does not intend an unconstitutional result to support its new construction of Section 9454(b)(1)(ii), namely, that the exception extends to structural error at the post-conviction stage, in the form of a complete or constructive denial of counsel. *See id.* at 397–98, 930 A.2d at 1273.

In the first instance, the majority's rationale in this regard does not account for previous decisions of this Court that have held that the one-year time bar applies generally to claims of structural error. *See, e.g., Commonwealth v. Baroni,* 573 Pa. 589, 593, 827 A.2d 419, 421 (2003). Indeed, previously the Court had squarely rejected invitations to transport aspects of structural error doctrine to the time-bar context. *See id.* ("The precept that structural errors can never be deemed harmless does not serve to create state court jurisdiction that is otherwise absent.").

The majority's resolution appears to be directed toward ameliorating the discomforting aspect associated with a denial of additional judicial review in the present circumstances.[3] It should be noted, however, that the Superior Court has previously attempted to implement various equitable exceptions to the one-year time bar in circumstances that would seem at least as compelling, *see, e.g., Commonwealth v. Robinson,* 781 A.2d 152 (Pa.Super.2001), but those efforts have been consistently rebuffed by this Court, *see, e.g., Robinson,* 575 Pa. at 500, 837 A.2d at 1157. *See generally Commonwealth v. Bennett,* 842 A.2d 953, 958 (Pa.Super.2004) ("The Court in *Robinson* further sealed shut the door to ... circumventions, and in doing so, emphatically admonished this Court's 'tinkering' with the jurisdictional mandate of the PCRA."). Further, the majority offers nothing to explain why structural error at the

---

**3.** As developed below, however, I do not believe that Appellant's case for substantive relief is as compelling as portrayed in the Superior Court's opinion.

post-conviction stage renders a petitioner more deserving of collateral judicial review than structural error that occurred at trial.[4] In my view, therefore, the limiting principle that the majority imposes cannot fairly be contained along the line that the majority draws—if the application of Section 9545's one-year time bar is unconstitutional as applied to the present petitioner, having assertedly suffered a structural-type error at a latter stage of the judicial process, I see no logical reason why the Constitution would permit others to be excluded from review merely because the structural component of their claims go to an earlier stage.[5] In either event, if the petitioner's claim of structural error is meritorious, he will have been denied fundamental fairness at a critical stage of the proceedings and may be deserving of post-conviction relief.

Candidly, any formulation of a time limitation curtailing collateral judicial review must accept that some legitimate claims may possibly escape review.[6] Nevertheless, a time bar

4. For example, under the majority's approach, the PCRA's one-year time bar would foreclose review of the claim of a petitioner who suffered a provable structural error at trial, but whose claim was not raised on account of ineffective assistance on the part of his trial, direct appeal and/or post-conviction counsel, as long as counsel asserted other, non-meritorious claims. As a matter of pure fundamental fairness, there would seem to be no reason why such a litigant is any less deserving of review than one who suffered structural-type error at the post-conviction stage, but whose trial may have been conducted entirely consistent with constitutional norms.

5. The *Cronic* doctrine of presumed prejudice arises in the substantive relief context—the doctrine simply was not designed to address a jurisdictional time bar. *Cronic* highlights the deleterious effect of a certain narrow category of errors that are so fundamentally connected with the integrity of the adjudicatory process that, by their very character, they necessarily undermine confidence in a verdict. *See Cronic*, 466 U.S. at 658–60, 104 S.Ct. at 2046–47. The doctrine does not distinguish between persons who are and are not substantively entitled to review and/or relief, but rather, merely provides an evidentiary advantage to a claimant suffering structural error by relieving him of the requirement to establish prejudice. Under *Cronic*, other petitioners who can prove the same element, namely prejudice, may still be afforded relief upon the appropriate evidentiary showing.

6. The standard of proof governing criminal liability also does not require that absolute certainty be had or maintained. For example, the Federal Judicial Center Pattern Jury Instructions, which have been cited with approval by various members of the United States Supreme

applicable to post-conviction review is a rational, and perhaps necessary, legislative response to serial challenges raised by prisoners that undermine finality and tax government resources, and to effectively implement a limitation, exceptions by their nature must contain effective boundaries to prevent them from undermining the general rule. As reflected in *Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638 (1998), consistent with constitutional norms, the Legislature may impose reasonable limitations on state collateral review in criminal cases. *See id.* at 556, 722 A.2d at 642. Notably, the judicial process contains multiple and overlapping checks, including the trial, direct-appeal, and post-conviction procedures and the affordance of counsel to indigent criminal defendants at each stage.[7] It remains my position that this scheme allows criminal defendants the reasonable opportunity to vindicate meritorious legal challenges, and the time bar represents and remains a reasonable limitation on habeas corpus review, even in the absence of the availability of an endless series of potential as-applied challenges and/or the new construct that the majority fashions to address the present one. I joined *Peterkin* based on this belief, which I reaffirm today.[8]

Finally, in a footnote, the majority explains that Appellant's issue is significant, because the Superior Court ultimately granted a new trial to a codefendant, Kevin Wyatt, based on his similar claim under *Commonwealth v. Huffman*, 536 Pa.

Court, provide: "There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt." FJC Pattern Jury Instruction # 21 (1998).

7. Although Appellant did not pursue a direct appeal in the Superior Court, the system provided him the opportunity to do so. Moreover, Appellant was provided with legal counsel at trial, and a neutral common pleas judge reviewed the challenges that he initially raised there.

8. Notably, the statutory after-acquired evidence exception to the time bar should accommodate claims on the part of a post-conviction petitioner acquires proof of actual innocence, which is a central concern underlying both the PCRA and traditional habeas corpus review. As developed below, I do not regard Appellant's claims as being within this category.

196, 638 A.2d 961 (1994). *See* Majority Opinion, at 1266 n. 3. It should be noted, however, that, in terms of their culpability, Appellant and Wyatt are not identically situated relative to the underlying robbery-homicide, since Wyatt did not supply the accomplice with the handgun used to perpetrate it, as Appellant did. *See* Majority Opinion, at 1266. Moreover, as the Commonwealth develops at length in its brief, the *Huffman* issue is a discrete type of claim that goes solely to a conviction for first-degree murder. *See Huffman*, 536 Pa. at 198, 638 A.2d at 962. Given Appellant's conviction for the associated robbery and the jury's express finding that the killing was perpetrated in the course thereof, the crime of second-degree murder is a lesser included offense to his first-degree murder conviction. *See Commonwealth v. Roberts*, 484 Pa. 500, 503, 399 A.2d 404, 405 (1979). Since Appellant's challenge does not impact on this lesser included offense, I believe that the most that Appellant should be able to expect from his *Huffman* claim, if it were to prevail, is a modification of his sentence from first—to second-degree murder. *See generally* James A. Shellenberger and James A. Strazzella, *The Lesser Included Offense Doctrine and the Constitution: The Development of Due Process and Double Jeopardy Remedies,* 79 Marq. L.Rev. 1, 183–89 (1995) (collecting cases relative to the appellate courts' power to modify judgments of sentence in cases in which trial error does not affect lesser included offenses). Notably, such a change would have no impact on the life sentence that Appellant is serving. *See* 18 Pa.C.S. § 1102(b) (requiring the imposition of a life sentence upon a conviction for second-degree murder). Thus, as the Commonwealth argues, on its merits, this case can be viewed as presenting a largely academic exercise, and one that the Post Conviction Relief Act was not designed to address.

In accordance with the above, I respectfully dissent, as I would uphold the traditional understanding of the after-discovered evidence exception to the PCRA's one-year time bar, since I believe that it is more closely in line with the Legislature's intent than the majority's present construction and

appropriately has been held to satisfy constitutional requirements.

Justice CASTILLE joins this dissenting opinion.

Justice EAKIN, Dissenting.

I dissent because I believe *Commonwealth v. Chester*, 586 Pa. 468, 895 A.2d 520 (2006) controls this matter.

Under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.*, all petitions, including second or subsequent petitions, must be filed within one year of the date the judgment of sentence becomes final, unless one of the statutory exceptions applies. *Chester*, at 522 (citing 42 Pa.C.S. § 9545(b)(1); *Commonwealth v. Yarris*, 557 Pa. 12, 731 A.2d 581 (1999)). The PCRA's time-bar is jurisdictional in nature. *Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638, 641 (1998). Appellant argues this Court should consider his PCRA petition under the exception to the one-year time limitation in 42 Pa.C.S. § 9545(b)(1)(ii). This subsection requires a petitioner to prove the facts upon which the claim is predicated were unknown to him and could not have been ascertained by the exercise of due diligence. *Chester* recognized "for purposes of 42 Pa.C.S. § 9545(b)(1)(ii), information is not 'unknown' to a PCRA petitioner when the information was a matter of public record." *Chester*, at 523 (citing *Commonwealth v. Lark*, 560 Pa. 487, 746 A.2d 585, 588 n. 4 (2000); *Commonwealth v. Whitney*, 572 Pa. 468, 817 A.2d 473, 478 (2003)). Under *Chester*, it is clear information that is a matter of public record—like the dismissal of an appeal—is not "unknown" to a PCRA petitioner. Therefore, appellant cannot meet § 9545(b)(1)(ii).

Because the time-bar is jurisdictional, and this PCRA petition is clearly time-barred, I respectfully dissent.

Justice CASTILLE joins this dissenting opinion.