**[J-21-2017][M.O. – Wecht, J.]**

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No.  726 CAP |
| | : | |
| Appellee | : | Appeal from the Order dated 5/2/16 in |
| | : | the Court of Common Pleas, |
| v. | : | Lackawanna County, Criminal Division |
| | : | at No. CP-35-CR-0000748-1983 |
| | : | |
| DAVID CHMIEL, | : | |
| | : | |
| Appellant | : | SUBMITTED:  January 30, 2017 |

## *CONCURRING OPINION*

**CHIEF JUSTICE SAYLOR**                    **DECIDED:  November 22, 2017**

I support the majority's holding that jurisdiction lies.  However, I have difficulty with the linchpin of its analysis, *i.e.,* that forensic examiner George Surma "used microscopic hair analysis in an attempt to link Chmiel to the crime[s]" of which he was accused, on the order of the linkage that has now been repudiated by the Federal Bureau of Investigation.  Majority Opinion, *slip op.* at 13.

To the extent that the issue is whether Mr. Surma used hair comparison "definitively to link" Appellant to the crimes, *id.* at 15, I do not believe that this is what occurred.  In point of fact, the examiner explained to the jury that he could never say whether a particular hair derived from a specific person, *see* N.T., August 27, 2002, at 30; that he was engaged only in a "process of exclusion," *id.*, and that any hair sample could have the same microscopic characteristics as hair taken from multiple individuals.  *See id.* at 31.  Along these lines, Mr. Surma couched his conclusion in terms of the evidence-sample hairs being "a possible source from [Appellant's] head."  *See id.* at 23.

As noted by a prominent commentator, the FBI's revelations would appear to be "limited to the issue of overclaiming." David H. Kaye, *Ultracrepidarianism in Forensic Science: The Hair Evidence Debacle*, 72 WASH. & LEE REV. ONLINE 227, 228-29 (2015). In other words, although the agency has disapproved the use of physical comparisons as definitive proof of identity, it has not discredited microscopic hair comparison analysis as "an entire invalid science." *Id.* at 233. Indeed, the collaborators in the national review of criminal prosecutions in which such analysis was used have categorized the potential areas of concern as follows:

> *Error Type 1*: The examiner stated or implied that the evidentiary hair could be associated with a specific individual to the exclusion of all others.

> *Error Type 2*: The examiner assigned to the positive association a statistical weight or probability, or provided a likelihood that the questioned hair originated from a particular source, or rendered an opinion on the likelihood or rareness of the positive association that could lead the jury to believe that valid statistical weight can be assigned to a microscopic hair sample.

> *Error Type 3*: The examiner cited the number of cases or hair analyses worked in the lab and the number of samples from different individuals that could not be distinguished from one another as a predictive value to bolster the conclusion that a hair belongs to a specific individual.

DOJ, 65 *Forensic Science and Forensic Evidence I*, at 6-7 (Jan. 2017). Notably, from my point of view at least, it would be difficult to attribute any of these errors to Mr. Surma's testimony.[1]

---

[1] As Appellant emphasizes, the prosecutor may have engaged in overclaiming, *inter alia*, via his assertion in his closing remarks that Mr. Surma's testimony depicted that the two evidence-sample hairs "match[ed] up to" Appellant's hair. N.T., Sep. 6, 2002, at 175. However, any misstatements the prosecutor may have made to the jury (continued…)

Despite the above reservations, I join the balance of the majority's analysis on the basis of *Commonwealth v. Bennett*, 593 Pa. 382, 930 A.2d 1264 (2007), which decoupled the "facts" contemplated by Section 9545(b)(ii) of the PCRA from the "claims" serving as the explicit bases for statutory post-conviction relief per Section 9543(a). *See id.* at 402–10, 930 A.2d at 1275–80 (Saylor, J., dissenting). In this regard, I agree with the majority's determination that the FBI's press release and attendant admissions constitute a newly discovered fact triggering jurisdiction under *Bennett*. As I understand *Bennett*, no further analysis concerning the relationship between the newly-discovered fact and the underlying merits-based claim is necessary or appropriate in the jurisdictional assessment. *See id.*

Finally, I observe that the liberal conferral of jurisdiction, in this instance, is consistent with the approach of conscientious prosecutors who are not opposing post-conviction review to determine whether criminal cases may have been affected by the acknowledged systemic error in the FBI's practices. *See* FBI Press Release, *FBI Testimony on Microscopic Hair Analysis Contained Errors in at Least 90 Percent of Cases in Ongoing Review*, at 2 (Apr. 20, 2015).

Justice Baer joins this concurring opinion.

---

(…continued)
concerning what Mr. Surma had said are not after-discovered facts, since they have been readily available for review since the time of trial.

Significantly, as well, the collaborators' concerns do not appear to be with the use of microscopic hair comparison analysis as a means of exclusion, as occurred relative to Appellant's brother.