J-S69010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BARRY LEE RHODES | |
| Appellant | No. 469 MDA 2016 |

Appeal from the PCRA Order Entered November 3, 2015
In the Court of Common Pleas of Lancaster County
Criminal Division at No: CP-36-CR-0000013-2011

BEFORE:  STABILE, DUBOW, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                **FILED JANUARY 12, 2017**

Appellant, Barry Lee Rhodes, appeals *nunc pro tunc* from the November 3, 2015 order denying in part the relief sought in Appellant's petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.  We affirm.

On July 15, 2011, a jury found Appellant guilty of numerous charges[1] arising from his sexual victimization of two minor girls, K.L.E. and K.M.E.,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1]  The jury found Appellant guilty of nine counts of indecent assault of a person less than 13 years of age (18 Pa.C.S.A. § 3126(a)(7)), one count of indecent assault of a person with a mental disability (18 Pa.C.S.A. § 3126(a)(6)), two counts of attempted rape of a child and one count of rape of a child (18 Pa.C.S.A. §§ 901(a) and 3121(c)), one count one count of aggravated indecent assault of a person less than 13 years of age
*(Footnote Continued Next Page)*

who were sisters and Appellant's great-nieces. On September 29, 2011, the trial court found Appellant to be a sexually violent predator ("SVP") and sentenced him to an aggregate 21 to 42 years of incarceration. The trial court denied Appellant's timely post-sentence motion on October 11, 2011. Appellant filed a timely notice of appeal on November 10, 2011, and this Court affirmed the judgment of sentence on October 1, 2012. Appellant did not seek allowance of appeal to the Pennsylvania Supreme Court. He filed a timely *pro se* PCRA petition on September 25, 2013. Appointed counsel filed an amended petition on May 4, 2015. The PCRA court conducted a hearing on July 7, 2015. On November 3, 2015, the PCRA court vacated Appellant's conviction for one of the counts of indecent assault of a person less than 13 years of age (18 Pa.C.S.A. § 3126(a)(7)), but otherwise denied relief. The PCRA court's order did not affect the aggregate sentence.

Due to an administrative oversight in PCRA counsel's office, Appellant did not file a timely appeal. On February 23, 2016, Appellant filed a second PCRA petition, seeking reinstatement of his right to appeal. The second petition alleged that counsel effectively abandoned Appellant, and that Appellant directed counsel to file a petition as soon as Appellant learned of counsel's abandonment. On March 1, 2016, the PCRA court entered an

*(Footnote Continued)* ————————————

(18 Pa.C.S.A. § 3125(a)(7)), one count of involuntary deviate sexual intercourse with a person with a mental disability (18 Pa.C.S.A. § 3123(a)(5)), and two counts of corruption of minors (18 Pa.C.S.A. § 6301(a)(1)).

- 2 -

order reinstating Appellant's right to appeal from the November 3, 2015 order. The PCRA court relied on ***Commonwealth v. Bennett***, 930 A.2d 1264 (Pa. 2007), in which our Supreme Court held that a second or subsequent PCRA petition can be timely under § 9545(b)(1)(ii)[2] if PCRA counsel abandons the petitioner and if the petitioner pleads and proves that he or she could not have learned of counsel's abandonment by the exercise of diligence. In this case, Appellant pled and proved counsel's abandonment to the PCRA court's satisfaction. The Commonwealth did not oppose Appellant's second petition. We therefore conclude the PCRA court had jurisdiction to entertain the second petition and reinstate Appellant's right to appeal from the November 3, 2015 order.

Appellant raises three issues for our review:

I.     Did the trial court err in holding that trial counsel was not ineffective for failing to object to the prosecutor's repeated statements of personal opinion, calling [Appellant] a liar, and the police truth tellers, for failing to request curative instructions, and for failing to raise and brief this issue on appeal?

II.    Did the trial court err in finding that trial counsel was not ineffective for failing to object to Dr. Hoshauer's statements that she had examined three siblings, that she

---

[2] The cited section provides an exception to the jurisdictional one-year time bar of § 9545(b)(1) where the petitioner pleads and proves that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S.A. § 9545(b)(1)(ii).

asked 'who told first?' and for failing to object to the admission, as substantive evidence, of [one of the victims'] statements to Dr. Hoshauer, naming her alleged abuser and describing the alleged abuse, and her actions in response to the alleged abuse?

III. Did the trial court err in finding that trial counsel was not ineffective for failing to effectively and properly impeach [one of the victims]. with her prior inconsistent statements to Dr. Hoshauer and Trooper [Derek A.] Koch?

Appellant's Brief at 4.

We must determine whether the record supports the PCRA court's findings and whether its decision is free of legal error. *Commonwealth v. Pitts*, 981 A.2d 875 878 (Pa. 2009). First, Appellant argues counsel was ineffective for failing to object to the prosecutor's remarks during his opening statement and closing argument. This claim is cognizable under § 9543(a)(2)(ii) of the PCRA. To succeed, a petitioner must plead and prove (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) that counsel's mistake prejudiced Appellant, *i.e.*, that there is a reasonable probability that the outcome of the proceeding would have been different but for counsel's error. *Commonwealth v. Bridges*, 886 A.2d 1127, 1131 (Pa. 2005).

"A prosecutor's remarks are fair if they are supported by evidence or contain inferences reasonably derived from that evidence." *Commonwealth v. Robinson*, 877 A.2d 433, 441 (Pa. 2005) (citing *Commonwealth v. Carter*, 643 A.2d 61, 75 (Pa. 1994). "[P]rosecutorial

- 4 -

misconduct does not occur unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict." ***Id.*** (citing ***Commonwealth v. Paddy****,* 800 A.2d 294, 316 (Pa. 2002)). "Due to the nature of a criminal trial, both sides must be allowed reasonable latitude in presenting their cases to the jury. ***Id.*** "A prosecutor's comments must be reviewed in the context in which they were made." ***Id.*** Mere "oratorical flair" during a prosecutor's summary of the evidence of the defendant's criminal acts is not misconduct. ***Commonwealth v. Chmiel***, 889 A.2d 501, 538 (Pa. 2005), *cert. denied*, 549 U.S. 848 (2006).

Our Supreme Court has held that "[i]t is improper for a prosecutor to offer his or her personal opinion as to the guilt of the accused or the credibility of any testimony." ***Commonwealth v. Hutchinson***, 25 A.3d 277, 307 (Pa. 2011). "However, it is well within the bounds of proper advocacy for the prosecutor to summarize the facts of the case and then to ask the jury to find the accused guilty based on those facts." ***Id.***

The prosecutor began his opening statement as follows:

> There is a famous novel of the 19[th] Century, which [sic] two men sit down and one man discusses the heavy weight, the binding power of his lies and misdeeds.
>
> In this case, ladies and gentlemen, you will see that the defendant cannot escape his.

N.T. Trial, 7/13/11, at 53. He continued:

At some point in time, ladies and gentlemen, you're going to hear from a series of troopers. Troopers who, during that time period, in the early stages of the investigation, interviewed the defendant. You'll hear how the conversation with Trooper George Forsyth, it initially started out as complete denials, turning into perhaps maybe I touched them when we were wrestling, comments on behalf of the defendant.

You'll then hear how the defendant met with Trooper Tom Waters and how what originally started with denials there turned into comments and admissions regarding certain children performing oral sex on him, specifically [K.M.E.].

You'll hear about how he justified the behavior. Pushed the blame onto these children. And then you'll hear an interview with Trooper Gerow and the defendant, where, again, the blame lies somewhere else.

*Id.* at 55.

Near the end of his opening, the prosecutor said:

There's no question, ladies and gentlemen, that as this case moves on, as you hear from all these people, it's going to be clear, from what I said at the start of my statement here before you today, that time may have passed, but the defendant cannot escape his lies and misleads [sic], much like that person in that conversation in that 19th Century novel.

*Id.* at 58.

Appellant claims the prosecutor committed misconduct by expressing his personal opinion on Appellant's lack of credibility. Trial counsel explained at the PCRA hearing that the prosecutor did not express, during his opening statement, a personal belief that Appellant was a liar. N.T. Hearing, 7/7/15, at 9-10.

Our review of the prosecutor's opening statement confirms that the prosecutor simply discussed what he believed evidence would show: that

Appellant gave inconsistent statements regarding the alleged acts, and that Appellant did not accept blame for the alleged acts. These comments did not express the prosecutor's personal belief as to Appellant's credibility. Further, we believe the reference to the 19th century novel was mere rhetorical flair. Appellant's argument that trial counsel should have objected to the prosecutor's opening statement lacks arguable merit.

During closing, the prosecutor again reviewed the evidence of Appellant's alleged dishonesty:

> Now, this defendant—I told you in the beginning, the 1880s novel about a man that is weighed down by his burdens. Ladies and gentlemen, this is that man. He has told so many lies he can't even keep them straight.
>
> First of all, it was nothing. I didn't do anything. And then all of a sudden it turned into, well, maybe I touched them when we were wrestling. And then it turned into, well, there was this time, I thought maybe I was dreaming about [K.M.E.] giving me a blowjob. But then I woke up and she was just masturbating me. And then, no, you know what happened? When I think about it, she was sucking on my penis.
>
> And then yesterday on the stand—again, your recollection of the testimony, your recollection, I don't even think he kept that straight on the stand yesterday as to whether or not she was sucking him or whether or not she was masturbating him.
>
> Regardless, he asks you to believe that as he's sleeping, [K.M.E.] just comes in and decides, it's time to masturbate Uncle Barry. I argue to you that that's not credible.

N.T. Trial, 7/15/11, at 350-51. The prosecutor continued,

> The statements of the defendant are damning. To believe that [K.M.E.] is so possessed with whatever of the defendant, some attraction to the defendant or need to be with the defendant, that as a small child she goes in and sucks on his penis? And he says himself, I didn't call. I didn't tell anybody.

- 7 -

He's concerned about being extorted. Well, did you call the police? No.

Ladies and gentlemen, I submit to you that that's not credible.

He told these troopers glimmers. Through so many lies, these troopers told you the glimmers of the truth. His world and the entire defense has pushed the blame onto others.

*Id.* at 354-55. Finally,

I told you at the beginning about that novel. Since I think you have a significant understanding at this point of this case, let me shed a little more light on that novel.

It was written by Charles Dickens in 1843. As those two men spoke, a guy by the name of Ebenezer said to Jacob Marley, speak some peace to me, shocked by the image of his longtime friend under heavy weights and tethers. Jacob Marley said, I can't, I can't. Let it be a warning to you but I can't. Every one of these weights I crafted myself with the lies and misdeeds I did in life.

And the defendant is before you now under the weight of his own misdeeds.

*Id.* at 359.

At the conclusion of the prosecutor's closing argument, defense counsel moved for a mistrial, arguing the prosecutor called Appellant a liar. *Id.* at 361-62. The trial court denied the motion, and defense counsel did not move for a curative instruction. Appellant now claims defense counsel was ineffective for failing to move for a curative instruction. We disagree. In order to provide context, we have quoted the prosecutor's closing at greater length than did Appellant in his brief. In our view, the prosecutor permissibly argued Appellant's guilt based on the facts of the case.

- 8 -

Appellant gave statements to the police and testified at trial. In doing so, he ran the risk that the prosecutor would use his statements against him. The prosecutor did not offer a blanket assertion that Appellant was a liar. Rather, the prosecutor argued that some of Appellant's exculpatory statements were unworthy of belief in light of other facts in evidence. Appellant's assertion of ineffective assistance fails because the underlying issue lacks arguable merit.

Next, Appellant argues trial counsel was ineffective for failing to object on several occasions to the testimony of Dr. Cathy Hoshauer, a pediatrician. The Commonwealth presented Dr. Hoshauer as an expert witness. Appellant argues that Dr. Hoshauer's hearsay account of one of the victims' statements was admissible only as impeachment evidence. In addition, Dr. Hoshauer testified that the two victims were among three siblings she examined. Appellant argues the reference to the third sibling was improper and prejudicial. The Commonwealth did not charge Appellant with any criminal wrongdoing toward the third sibling.

The Commonwealth and the PCRA court note that the victim's statements to Dr. Hoshauer are admissible under Pa.R.E 803(4):

> **(4) Statement Made for Medical Diagnosis or Treatment.** A statement that:
>
> (A) is made for--and is reasonably pertinent to--medical treatment or diagnosis in contemplation of treatment; and
>
> (B) describes medical history, past or present symptoms, pain, or sensations, or the inception or general character of the

cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment.

Pa.R.E. 803(4).

The record reflects that Dr. Hoshauer examined the two victims and reached a diagnosis of child abuse for one of them. N.T. Trial, 7/13/11, at 136-37.[3]

> Q. After going through your interview with [K.L.E.], reviewing her, did you ultimately reach a diagnosis?
>
> A. Yes.
>
> Q. What was that diagnosis?
>
> A. Child Abuse.
>
> . . .
>
> Q. When you say child abuse, can you explain what you mean by child abuse?
>
> A. The definition of child sexual abuse is that a child, from birth to 18, is the victim of inappropriate sexual contact by someone else for their own sexual gratification. That's the definition of child sexual abuse.

*Id.* In addition, Dr. Hoshauer offered the following:

> Q. Dr. Hoshauer, when you performed this exam, what was your goal in conducting the exam? What's –
>
> A. To be sure that the child's fine. Because, as I mentioned, the vast majority of children that I see have a normal exam. The reasons why I do these exams is not so much, you know, CSI, looking for DNA or anything like that. I

---

[3] The result for the second victim was normal, although that result did not exclude criminal conduct. *Id.* at 141.

> really just want to help the child to know that they're fine and that they can move on and their bodies are fine.

*Id.* at 146.

Appellant asserts, without citation to any evidence or legal authority, that Dr. Hoshauer did not conduct her examination in contemplation of treatment, and that the victim's statements to Dr. Hoshauer are therefore not admissible under Rule 803(4). The PCRA court disagreed, and the record supports the PCRA court's decision. Furthermore, statements admissible under Rule 803(4) are admissible as substantive evidence. *Commonwealth v. Fink*, 791 A.2d 1235, 1246 (Pa. Super. 2002). Finally, as Appellant asserts in support of his third question presented, Dr. Hoshauer testified to statements from K.L.E. that were inconsistent with some of the statements K.L.E. made at trial. In that sense, Dr. Hoshauer's testimony was helpful to the defense. The PCRA court did not err in rejecting Appellant's argument pertaining to Dr. Hoshauer's account of the victim's prior statements.

Appellant also argues that counsel should have objected when Dr. Hoshauer discussed portions of the victim's statement in which the victim named Appellant as the perpetrator. Appellant's Brief at 25. Appellant cites pages 130 and 131 of the July 13, 2011 trial transcript. The PCRA court acknowledged that statements identifying the alleged perpetrator are not admissible under Rule 803(4). PCRA Court Opinion, 11/3/15, at 8 n.7 (*see* Pa.R.E. 803(4), comment: "Statements as to causation may be admissible,

- 11 -

but statements as to fault or identification of the person inflicting harm have been held to be inadmissible."). Indeed, the record reflects that the prosecutor asked Dr. Hoshauer if the victim told Dr. Hoshauer what occurred between the victim and Appellant. N.T. Trial, 7/13/11, at 130. Thus, trial counsel should have objected to Dr. Hoshauer's testimony to the extent that it constituted a hearsay identification of Appellant as the perpetrator. Regardless, this victim testified at trial and identified Appellant as the perpetrator from the witness stand. Appellant had an opportunity to cross-examine her, and the jury was able to assess the credibility of the victim's identification testimony. Under these circumstances, we cannot conclude that counsel's error prejudiced Appellant.

Next, Appellant argues trial counsel was ineffective for failing to object when Dr. Hoshauer mentioned that she examined a third sibling, and that she asked one of the victims, "[W]ho told first?" We quote the relevant portion of the transcript:

> Q. Specifically in regards to [K.L.E.], what did she indicate was the reason she was there?
>
> A. Okay. She – I had seen her two other siblings prior to her. She was the third of the family that I was seeing. So I asked her to tell me who told first. That's how we started the conversation. And she explained that [K.M.E.] told first. And then I asked her to tell me –
>
> Q If I could just stop you right there.
>
> [Prosecutor]: Judge, may we approach briefly?
>
> THE COURT: All Right.

- 12 -

(A sidebar discussion was held off the record.)

N.T. Trial, 7/13/11, at 130.

At the PCRA hearing, defense counsel stated he did not object to Dr. Hoshauer's mention of the third sibling because the jury could infer that the Commonwealth did not charge Appellant with any criminal conduct toward her. Appellant offers no substantive argument in response. Appellant states, "Dr. Hoshauer should not have been permitted to mention examination of a third sister, as this testimony was irrelevant and prejudicial to [Appellant]. PCRA counsel does not agree that the jury would simply have inferred nothing happened to the third sister." Appellant's Brief at 27. As noted above, Appellant bore the burden of pleading and proving all three prongs of his ineffective assistance of counsel claim including prejudice. Appellant does not explain how the mention of a third sister prejudiced his case. We cannot conclude that a reasonable exists that the outcome of trial would have been different absent Dr. Hoshauer's mention of a third sister.

Concerning the "who told first" portion of Dr. Hoshauer's testimony, the record reveals that K.L.E. told Dr. Hoshauer that K.M.E.—who did not testify at trial—told first. Appellant does not develop any legal argument on this point in his brief, stating only that "Dr. Hoshauer should not have been permitted to testify that she asked "who told first," as though assuming that the allegations against [Appellant] were true, and to testify that the answer was K.L.E.'s sister, K.M.E., who did not testify at trial." Appellant's Brief at

27. Appellant never explains how, given the other evidence against him--including K.L.E.'s testimony and Appellant's own statements—counsel's timely objection would have altered the outcome of Appellant's trial. Appellant has failed to establish that counsel was ineffective.

Appellant's final argument is that trial counsel was ineffective for failing to cross-examine K.L.E. about her prior inconsistent statements. As Appellant explains in his brief, many of K.L.E.'s prior inconsistent statements came into evidence through Dr. Hoshauer's testimony. Appellant's Brief at 29-30. Appellant also argues that K.L.E.'s assertions to Trooper Derek Koch, in statements dated April 20, 2001 and June 27, 2001, were inconsistent with her trial testimony. Appellant's Brief at 34-36.

The record reveals that defense counsel re-called K.L.E. during his case-in-chief and examined her on her prior statement that a cousin had witnessed some of the abuse. N.T. Trial, 7/15/11, at 310. K.L.E. admitted stating that her cousin witnessed some of the abuse. *Id.* Defense counsel then called K.L.E.'s cousin, who denied ever witnessing Appellant abuse K.L.E. *Id.* at 313. Thus, defense counsel did produce evidence of a significant inaccuracy in one of K.L.E.'s prior statements.

At the PCRA hearing, trial counsel testified that he believed the jury would give K.L.E. some "leeway" as far as her memory of the events, given that the trial took place well after the alleged abuse and given that K.L.E. was very young when the alleged abuse occurred. N.T. Hearing, 7/7/15, at

- 14 -

24. Counsel also testified that he did not wish to appear to be badgering a young witness who was testifying about a traumatic experience that occurred when the witness was much younger. *Id.* at 35. Thus, counsel was content to allow the prior inconsistent statements to come in through another witness. *Id.*

In summary, the record reflects that defense counsel re-called one of the victims during the defense's case-in-chief to highlight a significant inaccuracy in one of her prior statements. Other inconsistent statements came in through Dr. Hoshauer. Thus, the factual premise of Appellant's assertion of ineffective assistance is not entirely accurate, and counsel offered a reasonable basis for declining to cross-examine K.L.E. in detail about all of her prior statements. For these reasons, we conclude that Appellant's assertion of counsel's ineffectiveness lacks merit.

In summary, we have concluded that Appellant failed to prove that defense counsel was ineffective, or that any of counsel's errors were so significant that, but for those errors, the outcome of trial would have been different. As explained above, Appellant ultimately admitted to sexual contact with K.M.E. We therefore affirm the PCRA court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2017