J-S44009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAVIER ORTIZ, | |
| Appellant | No. 3432 EDA 2016 |

Appeal from the PCRA Order Entered October 21, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-1003051-1999

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED AUGUST 31, 2017**

Appellant, Javier Ortiz, appeals from the order entered October 21, 2016, dismissing, as untimely, his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  After careful review, we vacate that order and remand for an evidentiary hearing.

During Appellant's direct appeal, this Court summarized the facts adduced at trial as follows:

> In this case, the record reveals the following: Appellant was arrested in connection with the shooting of Luis Delgado and Marcello Steele [hereinafter "Steele"], and he proceeded to a jury trial on February 9, 2001.  At trial, Anthony Coltrane testified that, during the early hours of May 9, 1999, he was sitting in his car at the corner of Marshall and Clearfield Streets in Philadelphia when he saw Appellant approach the driver's side of a nearby car, pull on his hood, and start shooting inside of the car.  Appellant then walked near Mr. Coltrane's car and yelled at him in Spanish.  Mr. Coltrane followed Appellant until he went

into the passenger side of a waiting car near Indiana Street. At trial, Mr. Coltrane specifically identified Appellant as being the shooter.

Rafael Alers testified[5] that he was selling drugs on the street during the early morning hours of May 9, 1999, when he saw a person he knew as "Javelito" approach the vehicle at issue and fire approximately seven shots inside. Mr. Alers identified Appellant as being "Javelito," and he indicated that he knew the deceased, Mr. Delgado. Prior to testifying during the preliminary hearing, Mr. Alers came into contact with Appellant. When Mr. Alers told Appellant he should not have killed Mr. Delgado, Appellant stated, "[I]t's just business. That's the way business goes."

[5] The Commonwealth was permitted to read Rafael Alers' preliminary hearing testimony into the record because Mr. Alers was proven to be unavailable at trial.

Police Officer Brian Werner testified that he was on duty on May 9, 1999, and he responded to the shooting at issue at 1:43 a.m. Upon arrival, he saw a male, who was in the driver's seat, unconscious and bleeding profusely from his head. Officer Werner and his partner loaded the male, who was later identified as being Luis Delgado, into their emergency patrol wagon and drove him directly to the hospital. Unfortunately, Mr. Delgado died from his wounds, and Officer Werner subsequently transported his body to the Medical Examiners' Office. The passenger of the vehicle, who was later identified as being Marcello Steele, was transported from the scene by paramedics.

Detective William Gross testified that on May 9, 1999, at approximately 3:15 a.m., he went to 6th and Clearfield Streets in Philadelphia to investigate the shooting at issue. Detective Gross testified that there were no bullets or bullet holes in the exterior of the automobile but that the interior contained a bullet, bullet holes, and numerous .9-millimeter shell casings. Detective Gross discovered a spent bullet[6] on the sidewalk near the vehicle's door. Based on the evidence at the scene, Detective Gross opined that the shooter stood outside of the vehicle by the driver's side door, stuck his hand inside of the vehicle, and shot a semiautomatic weapon inside of the vehicle.

[6] A "spent bullet" is what remains after the bullet hits something.

- 2 -

Dr. Edwin Lieberman, an assistant medical examiner, testified that he conducted Mr. Delgado's autopsy. He discovered that Mr. Delgado was shot in the head, upper left arm, and right middle finger. Dr. Lieberman testified that Mr. Delgado was shot with a minimum of five bullets.

Police Officer Nathan London testified that on May 12, 1999, at approximately 9:00 a.m., he was outside of police headquarters when Anthony Coltrane approached him. Mr. Coltrane told Officer London that he had witnessed a murder in the area of Marshall and Clearfield Streets on the date in question. Specifically, Mr. Coltrane told the officer that he saw a Hispanic male approach a parked car, pull out a gun, and fire several times into the car. Mr. Coltrane further told the officer that the Hispanic male said something to him in Spanish and then fled the area. In response to Mr. Coltrane's information, Officer London took Mr. Coltrane to the department's homicide unit.

Appellant testified that he did not shoot the victims and that he was not in the area at the time of the shooting. He testified that he was in Reading, Pennsylvania at the time of the shooting. On cross-examination, he admitted that his nickname was "Javelito."

*Commonwealth v. Ortiz*, No. 2596 EDA 2004, unpublished memorandum at 2-5 (Pa. Super. filed July 13, 2005). Notably, Steele, the only surviving victim in this case, was not called to testify at Appellant's trial.

On September 24, 2001, Appellant was convicted by a jury of first-degree murder, attempted murder, and carrying a firearm on a public street.[1] On April 24, 2001, the trial court sentenced Appellant to consecutive terms of life imprisonment, 8-20 years' incarceration, and 1-2 years' incarceration, respectively. This Court affirmed Appellant's judgment

_____

[1] 18 Pa.C.S. §§ 2502(a), 901, and 6108, respectively.

of sentence on December 5, 2005. **Commonwealth v. Ortiz**, 883 A.2d 692 (Pa. Super. 2005) (unpublished memorandum), *appeal denied*, 887 A.2d 1241 (Pa. 2005).

Appellant filed his first PCRA petition, *pro se*, on December 5, 2005. Subsequently appointed PCRA counsel filed an amended petition on his behalf on February 21, 2008. After the PCRA court denied his first PCRA petition, this Court affirmed on June 26, 2012. **Commonwealth v. Ortiz**, 53 A.3d 939 (Pa. Super. 2012) (unpublished memorandum). Appellant did not seek review from that decision with our Supreme Court.

Appellant filed, *pro se*, his second PCRA petition on May 11, 2015, which is the subject of the instant appeal. **See** Appellant's Initial PCRA Petition, 5/11/15 (hereinafter "Initial Petition"). Appellant then filed a supplemental PCRA petition on August 10, 2015. **See** Appellant's Supplemental PCRA Petition, 8/10/15 (hereinafter "Supplemental Petition"). The PCRA court then appointed counsel, who filed an amended petition on Appellant's behalf on December 22, 2015. **See** Appellant's Amended PCRA Petition, 12/22/15 (hereinafter "Amended Petition").[2] On October 21, 2016, the PCRA court denied the Petition without a hearing, on the basis that it had been untimely filed. PCRA Court Opinion (PCO), 11/3/16, at 1-3. Appellant timely filed a notice of appeal from that decision, and now

---

[2] Hereinafter, Appellant's Initial, Supplemental, and Amended Petitions will be referred to collectively as the "Petition," where appropriate.

- 4 -

presents the following question for our review: "Did the [PCRA] court err in denying … [A]ppellant an evidentiary hearing when [A]ppellant alleged in his PCRA Petition newly discovered evidence that demonstrated that he was innocent of the offenses of which he was convicted and[,] if credible[,] would have entitled him to a new trial?" Appellant's Brief at 2.

This Court's standard of review regarding an order denying a petition filed under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Ragan*, 923 A.2d 1169, 1170 (Pa. 2007). We must begin by addressing the timeliness of Appellant's petition, because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. *Commonwealth v. Bennett*, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

> **(b) Time for filing petition.--**
>
>> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>>
>>> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the

Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this Section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Any petition attempting to invoke one of these exceptions "shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Instantly, Appellant concedes that his Petition was untimely, but avers that he meets the newly discovered facts exception set forth in 42 Pa.C.S. § 9545(b)(1)(ii).

The timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. [*Commonwealth v.*] *Bennett*, … 930 A.2d [1264,] 1270 [(Pa. 2007)]. "This shorthand reference was a misnomer, since the plain language of sub-Section (b)(1)(ii) does not require the petitioner to allege and prove a claim of 'after-discovered evidence.'" *Id.* Rather, as an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii); *Bennett*, *supra*. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim. *See* 42 Pa.C.S.A. § 9543(a)(2)(vi) (explaining that to be eligible for relief under PCRA, petitioner must plead and prove by preponderance of evidence that conviction or sentence resulted from, inter alia, unavailability at time of trial of exculpatory evidence that has subsequently become available and would have changed outcome of trial if it had been introduced). In other words, the "new facts" exception at:

- 6 -

> [S]ubsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the facts upon which the claim was predicated were unknown and 2) could not have been ascertained by the exercise of due diligence. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.
>
> **Bennett**, **supra** at 395, 930 A.2d at 1272 (internal citations omitted) (emphasis in original). Thus, the "new facts" exception at Section 9545(b)(1)(ii) does not require any merits analysis of an underlying after-discovered-evidence claim. **Id.** at 395, 930 A.2d at 1271.

**Commonwealth v. Brown**, 111 A.3d 171, 176–77 (Pa. Super. 2015) (footnote omitted).

Appellant's newly discovered facts claim is based on two sworn affidavits he recently obtained from the surviving victim, Steele. **See** Steele Affidavit I, 5/6/15, at 1 (single page) (attached to Initial Petition); Steele Affidavit II, 8/6/15 (single page) (attached to Supplemental Petition). Steele, as noted above, did not testify at Appellant's trial. Furthermore, there is no indication in the record that Steele ever identified Appellant as his assailant. Thus, Steele's proposed testimony exonerating Appellant is not a recantation of any prior testimony.

In his affidavits, Steele averred that on March 23, 2015, he was transferred from SCI-Mahonoy to SCI-Frackville. On March 24, 2015 he saw Appellant in the prison yard and introduced himself. Appellant did not recognize him at first, so he told Appellant that he "was in the car with Luis Delgado when he was killed and that [he] knew that [Appellant] was not the

person who shot [them]." Steele Affidavit I at 1 ¶ 4. Steele told Appellant "that the person who shot [him] was Robert Paredes." *Id.*

Steele is now willing to testify that Appellant was not his assailant and, moreover, that he knows precisely who injured him and murdered Luis Delgado on May 9, 1999. *Id.* Steele also indicated in his affidavits that he was not willing to testify to that effect in the past out of fear of retribution from the actual perpetrator of the attack. *Id.* at ¶ 3. Moreover, Steele stated that "homicide detectives … showed me photo arrays in 1999 of [Appellant] and kept trying to coerce me into saying that he was the one … that committed the crime, when I kn[e]w for a fact it was Robert Paredes…." Steele Affidavit II at 1 ¶ 2. Although reluctant to disclose Robert Paredes' identity to those detectives, Steele "gave them a proper description of a guy with a beard, and hoped that they would find the guy themselves." Steele Affidavit I at 1 ¶ 3.[3]

Virtually no analysis, whatsoever, is provided by the PCRA court to support its denial of the Petition. Indeed, the PCRA court does not even mention the nature of Appellant's claim at all in it opinion. The PCRA court's opinion consists entirely of boilerplate PCRA law, and a single sentence

_____

[3] Indeed, when interviewed by police, Steele stated that the assailant "had a hoodie on, [and] either had a beard or something covering the bottom of his face. It happened so quick I couldn't get a good look at him." Investigation Interview Record, 4/12/00, at 3 (attached as the second exhibit to Initial Petition).

declaring that Appellant purportedly "failed to properly plead an exception [to the PCRA's timeliness requirements,] much less meet his burden of proof…." PCO at 3. More troubling, our own review of the Petition demonstrates that Appellant most certainly pleaded the applicability of a timeliness exception, specifically, 42 Pa.C.S. § 9545(b)(1)(ii). On its face, Appellant's Petition appears also to satisfy the requirements of 42 Pa.C.S. § 9545(b)(2), as Appellant filed it within 60 days of first speaking to Steele on March 24, 2015. Appellant specifically averred the applicability of the timeliness exception set forth in Section 9545(b)(1)(ii) in his Initial Petition,[4] Supplemental Petition,[5] and in his Amended Petition.[6] Accordingly, it is abundantly clear that this Court cannot affirm on the basis set forth in the PCRA court's opinion, because the cursory conclusion announced therein is not at all supported by the evidence of record. *Ragan*, 923 A.2d at 1170. Indeed, the record directly contradicts the basis for the PCRA court's decision.

Nevertheless, this Court "may affirm a PCRA court's decision on any grounds if the record supports it." *Commonwealth v. Ford*, 44 A.3d 1190,

_____

[4] *See* Initial Petition (Memorandum of Law at 3) (attached as the first exhibit).

[5] *See* Supplemental Petition at 1 ¶ 1.

[6] *See* Amended Petition at 2 ¶ 4 (incorporating, by reference, the Initial and Supplemental Petitions); *Id.* at ¶ 5a (directly averring his satisfaction of Sections 9545(b)(1)(ii) and 9545(b)(2)).

1194 (Pa. Super. 2012). Accordingly, we now turn to the Commonwealth's brief, in which the Commonwealth asserts several arguments for affirming the PCRA court's denial of the Petition on alternative grounds.

First, the Commonwealth contends that Appellant

failed to offer to prove in his petition that he raised this claim within sixty days of first learning of the alleged after-discovered evidence. **See** 42 Pa.C.S. § 9545(b)(2) (claims raised pursuant to statutory exceptions to time-bar must be raised within sixty days); **Commonwealth v. Bennett**, 930 A.2d 1264, 1271 (Pa. 2007) (PCRA petitioner must explain why he could not have learned the new facts earlier with the exercise of due diligence). Rather, he simply averred in his Memorandum of Law that Mr. Steele "did not come forward to tell the truth until 3-23-15 due to fear of the real perpetrator of the crime" (Memorandum of Law, 1). In his petition, he vaguely averred only that this allegedly "newly discovered evidence... could not have been discovered until 3-23-15" (Amended Petition, 2, ¶ 5a), without further explanation. This bald averment fell far short of fulfilling his burden, and this alone was enough for the PCRA court to dismiss his petition as untimely.

Commonwealth's Brief at 7-8.

We disagree. Steele's proposed testimony, if ultimately found credible by the PCRA court, would constitute sufficient proof that Appellant filed his Initial Petition in accordance within the 60-day requirement set forth in Section 9545(b)(2). The notion that Appellant *must* "prove" the factual averments in his Petition, *in the Petition itself*, rather than at an evidentiary hearing, is an absurdity. While it is possible in some circumstances that

proof of the basis for relief could be provided in a PCRA petition itself,[7] there would never be any need for an evidentiary hearing if, in fact, in all circumstances, averments must be both pled *and proven* in the petition. Rather, a PCRA petition must, at a minimum, aver facts which, *if proven*, would be sufficient to entitle the petitioner to relief. A hearing will always be (or almost always) be required, where the basis for relief is a newly discovered fact. Indeed, apart from the obviousness of these principles, our Rules of Criminal Procedure make them quite explicit:

> (A) Except as provided in Rule 907, the judge shall order a hearing:
>
> > (1) whenever the Commonwealth files a motion to dismiss due to the defendant's delay in filing the petition; or
> >
> > (2) **when the petition for post-conviction relief** or the Commonwealth's answer, if any, **raises material issues of fact**. However, the judge may deny a hearing on a specific issue of fact when a full and fair evidentiary hearing upon that issue was held at trial or at any proceeding before or after trial.

Pa.R.Crim.P. 908(A).

Here, Appellant raised material issues of fact in his Petition regarding: (1) whether he satisfied Section 9545(b)(2) by proffering Steele as a

---

[7] For instance, claims relying on the timeliness exception set forth in Section 9545(b)(1)(iii) are often "provable" in a PCRA petition itself, because the claim is premised on a new legal decision potentially affecting the petitioner. However, even in those circumstances, an evidentiary hearing might occasionally be necessary to determine whether the case under review is sufficiently analogous to the new decision, such as when the existing record is not sufficient to make that determination.

witness; (2) by averring that Steele would testify consistently with his proffered affidavits at the requested hearing; and (3) by presenting those affidavits, which on their face assert facts that could provide relief under Section 9545(b)(2) if found credible. It is beyond this Court's comprehension what more Appellant could have done in these circumstances to satisfy, in the petition itself, the requirements of the PCRA statute and Rule 908. While Appellant could potentially provide more corroborating evidence, Steele's and Appellant's testimony, alone, if deemed credible by the factfinder, would be sufficient to satisfy the exception pled by Appellant. Moreover, the Commonwealth's argument that Appellant merely presented "bald averments" of his satisfaction of Section 9545(b)(2) is belied by the ample discussion provided in the Petition regarding Appellant's satisfaction of that provision.

Second, but relatedly, the Commonwealth asserts that Appellant failed to sufficiently aver facts in the Petition demonstrating that he acted with due diligence, and, instead, that "the proffered affidavit itself rebuts any conceivable claim of due diligence." Commonwealth's Brief at 8. This argument is also belied by the record.

Appellant did, in fact, aver facts in his Petition which, if believed by the factfinder at an evidentiary hearing, could be sufficient to demonstrate that he acted with due diligence. Appellant did not baldly aver that he acted with due diligence in discovering the new evidence (Steele's exonerating affidavits). On their face, Steele's affidavits indicate that Steele was not

inclined to assist the police between the time of the shooting and Appellant's trial. *See* Steele Affidavit I at 1 ¶ 3 ("I was interviewed by the detectives in the hospital. At the time of the interview, I wasn't interested in cooperating, [b]ecause I didn't want the guy who shot me or his crew to come after me or my family.").

Moreover, in the legal memorandum accompanying the Initial Petition, Appellant dedicated a substantial part of his argument to the issue of due diligence. Therein, Appellant averred the following:

> The Petitioner now turns toward the due diligence standard that must be met to completely invoke jurisdiction.
>
> The Petitioner avers that the Commonwealth did not call Mr. Steele as a witness during his trial for the murder of Mr. Delgado, and he was unable to cross examine him concerning the identity of the shooter. Additionally, in his affidavit, Mr. Steele himself announced that he was reluctant to cooperate with the police investigating the crime, and intentionally failed to provide the name of Mr. Paredes as the shooter, out of fear of retaliation against him and his family. Even if Mr. Steele were called to testify, he would have provided, at a minimum, misleading information concerning the identity of the shooter. The Petitioner cannot be faulted for failing to timely discover new evidence from a person who admittedly lied to the police concerning the identity of the shooter. Nevertheless, the Petitioner avers that he made several attempts at locating Mr. Steele throughout the years after the trial occurred. The Petitioner sent several letters to Mr. Steele's last known address, all of which were returned to him undelivered. The Petitioner solicited the assistance of the community in locating Mr. Steele and they were unable to locate him because he intentionally absented himself from the area in which he was living. The Petitioner even solicited the assistance of a private investigator, wh[o] was unable to locate Mr. Steele to conduct an interview with him. As such, the Petitioner has made many reasonable attempts at due diligence to discover Mr. Steele's whereabouts.

When Mr. Steele approached the Petitioner at SCI-Frackville, the Petitioner was not even aware of who he actually was until he introduced himself. The Petitioner had never met Mr. Steele previously, and he was unfamiliar with where Mr. Steele lived or who he associated with. The Petitioner has clearly met the standard of … due diligence ….

Initial Petition (Memorandum of Law at 4-5).

The Commonwealth, however, claims in its brief that Appellant "only vaguely averred … that this allegedly 'newly discovered evidence … could not have been discovered until 3-23-15' … without further explanation." Commonwealth's Brief at 8. This assertion is clearly not supported by the record. Appellant's due diligence averments were not vague, and they were explained in sufficient detail to justify an evidentiary hearing on their merits.

We next consider the Commonwealth's assertion that Steele's affidavit itself rebuts Appellant's due diligence averment. The Commonwealth argues:

The affidavit avers that in 2002, Mr. Steele told a private investigator hired by defendant that defendant was not the shooter and that he would be willing to testify. Even if Mr. Steele had been "unknown" by defendant at the time of trial (and of course he was, as one of the two victims, known to defendant at trial), defendant still did not file his petition until May 11, 2015, thirteen years after the affidavit alleges that Mr. Steele first informed the defense of his supposed recantation.

Commonwealth's Brief at 9.

Here, the Commonwealth drastically overstates its case and, at best, has identified a reasonable topic of inquiry for an evidentiary hearing to determine whether Appellant acted with due diligence. That is, the

- 14 -

Commonwealth has essentially identified a basis upon which to challenge Appellant's claim of due diligence, but has not disproven it on the face of the record. In Steele's second affidavit, he stated:

> I was also seen by a Private Investigator … in 2002 on behalf of [Appellant]'s lawyer at the time, James Bruno. I was interviewed …. I gave [the investigator] a signed affidavit in hopes of rectifying the wrong that was done to [Appellant]. I stayed in the County Jail [for] a time and then went to State Prison and was never called to testify.

Steele Affidavit II at ¶ 3.

The Commonwealth's argument assumes too much from this statement. First, it is neither clear nor obvious that the investigator identified by Steele is the same one which Appellant referenced in the legal memorandum attached to his Initial Petition. Steele identifies an investigator working on behalf of Appellant's attorney, not Appellant directly, and claims that he met with him in 2002. Appellant's discussion of an investigator, on the other hand, suggests that he hired one directly, and he does not specifically indicate when that person conducted his investigation. It is possible, given these limited facts, that Steele and Appellant are not discussing the same investigator. Of course, any such confusion could be cleared up at an evidentiary hearing.

Furthermore, even assuming it was the same person, it is not at all clear that the investigator conveyed this information to his employer, whether that employer was Appellant alone, or his attorney. While it may seem implausible at first glance that an investigator would not have

conveyed this information to Appellant or his attorney (a signed affidavit exonerating Appellant, no less), it seems equally implausible to this Court that, with such an affidavit in hand, neither Appellant nor his prior attorney would have used it as basis to make a newly discovered facts claim at an earlier time.[8] A wholly distinct possibility is that Steele embellished his own efforts to right the wrong he had inflicted on Appellant by staying silent during the investigation.

All these possibilities, like the Commonwealth's argument, are merely speculative. The core issue with regard to the purported 2002 affidavit, if it ever existed at all, is whether Appellant was aware of it but nevertheless failed to act. Clearly, such a determination can only be made following an evidentiary hearing. Neither this Court, nor the Commonwealth, can accurately make legal conclusions based on purported 'facts' which have yet to be assessed, in any capacity, by the PCRA court.

Finally, we address the perfunctory argument offered by the Commonwealth in a few sentences set forth at the end of its brief. Commonwealth's Brief at 9. The Commonwealth essentially asserts that because Appellant knew he was not the shooter (given his assertion of innocence), that "he would have known that any eyewitnesses would have been able to exonerate him. Steele's affidavit thus could not theoretically

---

[8] Appellant's first PCRA petition was not filed until February 10, 2003, after Steele's purported production of an exonerating affidavit.

contain any 'fact' unknown to [Appellant] at his trial over a decade ago." *Id.* The Commonwealth believes this argument flows naturally from the undisputed proposition that Section 9545(b)(1)(ii) is focused "on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts." **Brown**, 111 A.3d at 176.

The problem with this line of argumentation is that it presumes that the newly discovered fact at issue is the very proposition of Appellant's innocence itself. This is an absurd assumption because, if taken to its logical conclusion, no evidence of any sort, physical or testimonial, could ever satisfy the exception to the PCRA's time-bar set forth in Section 9545(b)(1)(ii), unless the petitioner believed himself to be guilty at the time of trial, but only later discovered his innocence. The Commonwealth's argument seems clever enough at first glance, but at its heart, it is circular, meaningless, or both. If taken seriously, it would completely eviscerate the purpose of Section 9545(b)(1)(ii).

In this context, guilt and innocence are terms of art; specifically, legal conclusions which flow from facts established by evidentiary rules and credibility determinations, not facts in and of themselves. The newly discovered facts exception therefore does not contemplate innocence itself as a fact which might be newly discovered – at least not exclusively. Instead, it concerns newly discovered evidence or facts *which tend to prove innocence or disprove guilt*.

Instantly, Steele was, by his own admission, not willing to exonerate Appellant before and during Appellant's trial. If found credible at an evidentiary hearing, this would demonstrate that Appellant was not aware, and could not have become aware before or during his trial, that Steele could have identified the actual assailant, thereby exonerating Appellant. Thus, the proffered evidence of Steele's testimony is *new to Appellant*, even if Appellant always knew himself to be innocent. Indeed, Appellant specifically avers that, prior to his trial, his trial "counsel relayed to him that he spoke to Mr. Steele and that [Steele] could not provide any information concerning the identity of the assailant." Initial Petition (Memorandum of Law at 5).

For the above reasons, we conclude that the PCRA court abused its discretion in denying Appellant's Petition without a hearing. The cursory conclusion set forth in its opinion was not supported by the record, and this Court cannot identify any other legal basis upon which to affirm that conclusion, after careful consideration of the arguments to that effect presented by the Commonwealth. Accordingly, we are compelled to remand for an evidentiary hearing to determine whether Appellant acted with due diligence in discovering the new facts represented by Steele's affidavits, and, if so, whether the newly discovered facts are credible and warrant a new trial.

Order **vacated**. Case **remanded** for an evidentiary hearing. Jurisdiction **relinquished**.

Judge Musmanno concurs in the result of this memorandum.

Judge Shogan notes her dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/31/2017