J-S62016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LAFAYE GASKINS | : | |
| | : | |
| Appellant | : | No. 2371 EDA 2017 |

Appeal from the PCRA Order June 29, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0638541-1989

BEFORE:  LAZARUS, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED JANUARY 17, 2019**

LaFaye Gaskins appeals from the order denying his petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546 ("PCRA"), as untimely. Gaskins argues that his petition was timely under the newly-discovered facts and governmental-interference exceptions to the PCRA time-bar. We remand for a determination as to whether the newly-discovered facts exception applies. However, we affirm the PCRA court's conclusion that Gaskins failed to establish the governmental interference time-bar exception.

We summarized the facts of this case in a prior appeal as follows:

> [T]he testimony at trial established that, on the day of the murder, [Gaskins] and several cohorts conspired to sell a large quantity of drugs to the victim and the victim's friend. This was not the first time that such a transaction had occurred, and the parties were familiar with each other.
>
> Mr. Edward Lee Clyburn, the victim's friend, remained in the vehicle during the transaction because he noticed that [Gaskins] was armed and feared that [Gaskins] planned to

rob them. Mr. Clyburn warned the victim to forego the sale, but the victim did not heed his advice and insisted on going through with the sale.

Mrs. Gloria Pittman, a local resident, saw [Gaskins], the victim and a third man engaged in conversation across from her home. The victim carried a distinctive draw-string bag which contained approximately $20,000. The threesome then entered an abandoned building. Soon thereafter, Mrs. Pittman heard a gunshot and observed [Gaskins] and the third man flee the scene. At this time, [Gaskins] carried the same bag previously observed with the victim.

*Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa.Super. 1997). We further noted that Pittman "testified at trial in a coherent and certain manner" and that she "remained resolute," even though trial counsel conducted "a rigorous cross examination in which [counsel] attempted to discredit [her] by questioning her [about] her drug use on the day in question and her ability to identify with certainty strangers seen from her window across the street." *Id.* at 228.[1]

A jury found Gaskins guilty of first-degree murder, robbery, and possession of an instrument of crime, and the trial court sentenced him to life in prison. This Court affirmed the conviction on November 6, 1992. Gaskins did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

Gaskins has filed numerous petitions seeking post-conviction relief. The following filings and orders are relevant to this appeal. In 2004, Gaskins filed

---

[1] The Notes of Testimony are not part of the certified record. From additional filings, it also appears an additional witness, Ralph Taylor, testified to, at a minimum, introducing Gaskins to the victim. *See, e.g.,* Supp. Am. Pet. Under the Post Conviction Relief Act, filed Mar. 22, 1994, at ¶ B.

a PCRA petition, alleging it was timely under the newly-discovered fact exception and raising, among other claims, an after-discovered evidence claim based on an affidavit from Barry Ward, Gaskins' step-uncle. Ward stated in the affidavit that Pittman told him that she was paid for her testimony. The PCRA court denied this petition as untimely, and we affirmed.

In 2006, Gaskins filed another PCRA petition, which challenged the jury selection procedure the Philadelphia District Attorney's Office used. The PCRA court denied the petition; Gaskins did not appeal.

In 2008, Gaskins filed a PCRA petition seeking leave to appeal *nunc pro tunc* the denial of his 2006 PCRA petition. The PCRA court denied this petition as untimely.

In 2009, Gaskins filed a PCRA petition seeking, among other things, leave to appeal the denial of the 2008 PCRA petition *nunc pro tunc* because the PCRA court failed to advise him of his appellate rights when it denied his 2008 petition. The PCRA court granted the petition, but Gaskins did not file the appeal.

On March 13, 2012, Gaskins placed the instant PCRA petition in the mail. He made two claims: (1) He has after-discovered evidence that Pittman was coerced into providing identification testimony; and (2) he is entitled to *nunc pro tunc* reinstatement of his right to appeal the dismissals of his prior PCRA petitions.

As to his after-discovered evidence claim, he asserted the newly-discovered fact exception to the PCRA time bar and pled the following. After

- 3 -

Ward told Gaskins' mother in November 2003 that Pittman had said she was paid for her testimony, Gaskins' mother hired a private investigator to locate both Ward and Pittman. The investigator found Ward in May 2004 and obtained his affidavit, and Gaskins filed his May 2004 PCRA petition based on that affidavit. However, the investigator did not locate and interview Pittman until October 2005. At that time, Pittman said that she could not identify the person she saw on the night of the shooting and had told police officers so. PCRA Pet., filed Mar. 13, 2012 ("2012 PCRA Petition"), at 8 & Ex. F. However, Pittman stated the only money she received was for car fare and "maybe something to eat if she was there all day." *Id.* She also said that she "never lied about anything," neither the police nor the prosecutor told her to lie about Gaskins, and she was never paid for testimony. *Id.*

Pittman later wrote to Gaskins in January 2012, telling a slightly different story. She again stated that she did not, and could not, identify Gaskins on the night in question, but for the first time said that she "went to court because the police said that if I didn't that they were going to lock me up." 2012 PCRA Pet., at Ex. A, Letter from Pittman to Gaskins, dated January 14, 2012. She subsequently signed an affidavit stating she was not able to identify Gaskins, but did so "because of police pressure" and because she "did not want to be locked up." 2012 PCRA Pet., at Ex. B, Pittman Affidavit. She further stated in her affidavit that she would be willing to testify at a hearing on the matter. *Id.* After receiving the affidavit, Gaskins filed the instant PCRA petition.

Regarding his request to appeal the denials of his prior PCRA petitions, Gaskins asserted that this request was timely pursuant to the governmental-interference exception, and pled as follows. In January 2011, he allegedly received a copy of the trial court's docket entries, at which time he first learned of the order granting him a *nunc pro tunc* appeal of the denial of his 2008 petition. The docket entry reads, "Order Granting PCRA Petition - Leave to Appeal NPT to Superior Ct . . . From PCRA that was dismissed on 2/26/2008." Docket entry, 12/17/2010.

However, Gaskins alleges that the order did not dispose of other claims his 2009 petition raised. His mother called the judge's chambers, and the secretary allegedly said that there was a status hearing scheduled for February 28, 2011, and that the court would issue an order after it reached a decision on the other claims. No hearing took place. Gaskins wrote to the PCRA judge in April 2011, inquiring as to the status of his case. He received in response a copy of the docket sheet, identical to the one he received in January 2011. His mother called the judge's chambers again but learned no additional information.

He then wrote to the president judge of the Philadelphia Court of Common Pleas in May and June 2011, but received no relief. He then filed a petition for original process and a writ of mandamus and/or extraordinary relief in the Pennsylvania Supreme Court. The Court granted his request for original process in February 2012, but refused to grant a writ of mandamus

or extraordinary relief. Gaskins then instituted this PCRA petition in March 2012.

The PCRA court appointed counsel, who filed an amended petition. The court later denied the instant PCRA petition as untimely, and Gaskins filed a timely appeal.

Gaskins raises the following issues:

1. Whether the PCRA court erred by dismissing the newly discovered recantation claim as untimely, where [Gaskins] alleged and proved that he could not have raised it earlier by exercise of due diligence, the claim did invoke the PCRA exception at 42 Pa.C.S.A. § 9545(b)(1)(ii), and it was timely filed within 60 days of obtaining Gloria Pittman's affidavit pursuant to § 9545(B)(2)?

2. Whether the PCRA court erred by dismissing as untimely [Gaskins'] claim that he is entitled to reinstatement of [Gaskins'] rights due to government interference?

Gaskin's Br. at 2 (unnecessary capitalization and trial court answers omitted).

Our standard of review from the denial of post-conviction relief "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Ousley**, 21 A.3d 1238, 1242 (Pa.Super. 2011).

The timeliness of a PCRA petition is jurisdictional. A PCRA petition "shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S.A. § 9545(b)(1). A judgment is final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the

Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

This Court affirmed Gaskins' judgment of sentence on November 6, 1992. His judgment therefore became final on December 7, 1992.[2] His current petition, filed on May 14, 2012, is therefore facially untimely.

To overcome the one-year time bar, Gaskins bore the burden of pleading and proving one of the three exceptions: (i) unconstitutional interference by government officials; (ii) newly discovered facts that he could not have previously ascertained with due diligence; or (iii) a newly recognized constitutional right that has been held to apply retroactively. *See* 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Further, the petition must have been "filed within 60 days of the date the claim could have been presented." *See* 42 Pa.C.S.A. § 9545(b)(2).

Regarding his after-discovered evidence claim based on Pittman's affidavit, Gaskins claims he proved the newly-discovered fact exception to the PCRA time bar. To satisfy this exception, a PCRA petitioner must plead and prove that "the facts upon which the claim was predicated were unknown" to him and "could not have been ascertained by the exercise of due diligence."

---

[2] Thirty days from November 6, 1992 was December 6, 1992, which was a Sunday. *See* Pa.R.A.P. 1113(a) (stating petition for allowance of appeal "shall be filed . . . within 30 days after the entry of the order of the Superior Court"). Gaskins, therefore, had until Monday December 7, 1992 to file a timely petition for allowance of appeal. 1 Pa.C.S.A. § 1908 (excluding weekends and holidays from the computation of time when the last day of the time period falls on a weekend or holiday).

42 Pa.C.S.A. § 9545(b)(1)(ii); **Commonwealth v. Bennett**, 930 A.2d 1264, 1272 (Pa. 2007).

Here, the PCRA court found that Gaskins failed to demonstrate that "Pittman's admission to providing perjurious testimony was previously unascertainable with the exercise of due diligence." Trial Court Opinion, filed Oct. 23, 2017, at 4 ("1925(a) Op."). The court based this finding on Gaskins' "inaction" from 1990 to 2004, when he first took steps to speak with Pittman, opining that "he has been aware of the falsity of her testimony since his trial in 1990." **Id.**

We do not agree that his "inaction" during this time constituted a lack of reasonable diligence.[3] We have previously rejected the argument that a victim's recantation was not a newly-discovered fact because the defendant "knew" prior to trial that the victim was not telling the truth. **Commonwealth v. Loner**, 836 A.2d 125, 137 n.5 (Pa.Super. 2003) (*en banc*)); **see also Commonwealth v. Medina**, 92 A.3d 1210, 1217 (Pa.Super. 2014) (*en banc*). The PCRA court attempts to distinguish **Medina**, claiming Gaskins had reason to believe Pittman "may have been agreeable to divulging her fabrication sooner" because his cross-examination of her "revealed several inconsistencies and contradictions 'leaning toward misidentification.'" 1925(a) Op. at 4 n.6.

---

[3] We do not decide whether Ward's affidavit, and Gaskins knowledge thereof, and the steps taking after receipt of the affidavit, constitute reasonable diligence.

We disagree. Although the cross-examination may have revealed "inconsistencies," this does not mean Gaskins should have assumed Pittman was lying, or that if he approached her she would have recanted. Pittman could simply have mistakenly believed that she saw Gaskins. **See Commonwealth v. Walker**, 92 A.3d 766, 779 (Pa. 2014) (discussing eyewitness testimony and noting "eyewitnesses can offer inaccurate, but honestly held, recollections in their attempt to identify the perpetrator of a crime"). In addition, Pittman's unwillingness to divulge the alleged fabrication sooner is supported by the allegation that when first approached by Gaskins' investigator, Pittman did not want to assist Gaskins.

Here, the PCRA court did not hold an evidentiary hearing, and made no findings as to Gaskins' diligence post-2004. Further, the "due diligence inquiry is fact-sensitive and dependent upon the circumstances presented." **Commonwealth v. Shiloh**, 170 A.3d 553, 558 (Pa.Super. 2017) (quoting **Commonwealth v. Burton**, 121 A.3d 1063, 1071 (Pa.Super. 2015) (*en banc*)). Therefore, we remand to the PCRA court for further findings as to whether Gaskins has met the newly-discovered facts exception to the time bar, particularly as to whether he acted with due diligence after receiving the 2004 Ward affidavit.

Gaskins next claims that his right to appeal the prior denial of his PCRA petitions should be re-instated *nunc pro tunc*. He claims that he pled and proved the governmental-interference time bar exception because the PCRA court failed to advise him that his appellate rights were reinstated.

To establish the governmental-interference exception, a petitioner must plead and prove (1) the failure to previously raise the claim was the result of interference by government officials, and (2) the petitioner could not have obtained the information earlier with the exercise of due diligence. **Commonwealth v Abu-Jamal**, 941 A.2d 1263, 1268 (Pa. 2008). A claim seeking reinstatement of PCRA appeal rights *nunc pro tunc* is cognizable under the PCRA and is subject to the PCRA's time constraints. **See Commonwealth v. Bennett**, 930 A.2d 1264, 1267 (Pa. 2007). The petitioner thus must assert the claim within 60 days of discovering the basis of the claim. 42 Pa.C.S.A. § 9545(b)(2).

Gaskins alleges the date on which he learned that the PCRA court reinstated his appellate rights was January 14, 2011. Because Gaskins did not file the instant petition until March 2012, the PCRA court concluded that he filed it outside the 60-day window and cannot overcome the time-bar as to this claim. The record supports these determinations. The docket entry from which Gaskins claims to have first learned of the grant of his 2008 petition on its face disposed of the 2009 petition. Conversely, no docket entry (or order or other document in the certified record) states that a further hearing would occur in February 2011. Gaskins therefore did not plead a reasonable basis for not filing a further PCRA petition when that hearing did not occur.

Order affirmed in part. Case remanded in part with instructions. Jurisdiction relinquished.

- 10 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/17/19