J-A16042-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DENNIS FULTON :
:
Appellant : No. 80 EDA 2021

Appeal from the PCRA Order Entered October 8, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003414-2014

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED JULY 6, 2022**

Dennis Fulton (Fulton) appeals from the order entered in the Court of

Common Pleas of Philadelphia County (PCRA court) dismissing his second

petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.

§§ 9541-9546, as untimely. In his PCRA petition, Fulton claimed that he met

the governmental interference exception to the time-bar based on the PCRA

court's failure to allow retained counsel to amend his first PCRA petition, and

that he met the newly-discovered facts exception because he was not aware

that the victim's wallet was missing and would not be presented at trial. In

his brief, he raises multiple issues of trial, former PCRA and appellate counsel's

_____

[*] Retired Senior Judge assigned to the Superior Court.

ineffective assistance, alleges that the Commonwealth committed a **Brady**[1]

violation by not presenting the victim's wallet at trial or apprising him that it

was missing, maintains that the PCRA court erred in denying retained

counsel's continuance request in his first PCRA matter, in sentencing him

without a PSI and in failing to hold a hearing. We affirm.

We take the following factual background and procedural history from

the PCRA court's October 8, 2020 opinion, this Court's July 23, 2019 opinion

and our independent review of the record.

**I.**

On January 6, 2014, Fulton was charged with murder, robbery and

related offenses. He proceeded to a jury trial in November 2015. This Court

set forth the relevant facts adduced at trial in its July 23, 2019 opinion:

> On February 7, 2008, Aisha Evans purchased a Smith &
> Wesson Model 10 .38 Special revolver, serial number D424759,
> for the father of her children, the Defendant Dennis Fulton. Evans
> purchased the revolver for [Fulton] because he could not buy the
> gun himself.
>
> Prior to the murder, the decedent Rudolph Wilkerson, a 61
> year-old neighborhood "hack driver," provided several unlicensed
> taxi rides to the [Fulton], Evans, and several others living in the
> neighborhood. During one hack ride, the decedent allegedly
> flirted with Evans, which greatly upset the [Fulton].
>
> On June 17, 2010, the decedent purchased thirty bundles of
> heroin from Frank Johnson, Jr., a drug dealer who occasionally
> employed the decedent. Edwin Castro, the decedent's neighbor,

---

[1] **Brady v. Maryland**, 373 U.S. 83 (1963).

- 2 -

later observed the decedent transport the heroin in his green 1993 Ford Explorer.

On June 18, 2010, the evening of the murder, the decedent and Roger Aye, the decedent's close friend, socialized and smoked crack cocaine in the decedent's home. While using a "star 67" prefix to conceal his phone number, [Fulton] called the decedent three times between 11 p.m. and 11:34 p.m. and received no response. Once [Fulton] called the decedent from his unconcealed number, the decedent immediately returned [Fulton's] call and arranged to pick up [Fulton]. As he was leaving his home, the decedent told Aye that he needed to pick up a "young boy," referring to [Fulton], near Sixth Street and Emily Street. The decedent never returned home.

At 12:33 a.m. on June 19, 2010, Officers Brian Egrie and James Bragg responded to a radio call for an unresponsive male lying on the highway near 16 E. Wolf Street and discovered the decedent lying in a pool of blood. At 12:51 a.m., medics pronounced the decedent dead at the scene.

At approximately 1 a.m. on June 19, auto mechanic John Pilotti observed the decedent's vehicle illegally parked near the intersection of Seventh and Morris Streets, and called a towing service the next morning. That morning, Sergeant Kevin Cannon and Officer Melissa Curcio secured the vehicle and observed interior and exterior bloodstains.

At trial, Dr. Gary Collins, the former Philadelphia Deputy Medical Examiner and an expert in forensic pathology, testified that the decedent suffered[, *inter alia*, a] fatal, penetrating gunshot <u>wounds</u> to the back left of the head and the right shoulder [and] a fatal perforating gunshot wound to the central chest[.] … Dr. Collins concluded, to a reasonable degree of scientific certainty, that the cause of death was homicide by multiple gunshot <u>wounds</u>. Two bullets were recovered from the decedent and turned over to the Philadelphia Police Department Homicide Unit.

\*     \*     \*

Officer Ronald Weitman of the Firearms Investigation Unit, a ballistics expert, concluded that all four bullets recovered in this matter were .38/.357 caliber and exhibited "five right twist" rifling

markings. Officer Weitman concluded that each bullet was fired from the same weapon. At trial, Officer Weitman testified that all Smith & Wesson Model 10 .38 Special revolvers left "five right" markings on their respective bullets. In 2013, Officer Weitman examined the Smith & Wesson Model 10 revolver belonging to the [Fulton] and determined that the weapon fired .38 caliber bullets exhibiting "five right" rifling characteristics.

On August 7, 2010, Detective Kenneth Rossiter interviewed Aye, who stated that he left the decedent's home at approximately 7 a.m. the morning after the murder. As he travelled home, Frank Johnson Sr., a neighborhood drug dealer and Johnson Jr.'s father, told Aye that the decedent was murdered over 30 bundles of heroin. Aye said that, the day before the shooting, Castro saw the decedent transport the heroin in his green Ford Explorer.

Detective Rossiter recovered the decedent's cell phone and discovered that the [Fulton's] 267–271–6664 number was the last call to the decedent's phone. In the hour prior to the shooting, three calls were made from [Fulton's] phone to the decedent's phone using a "star 67" prefix to conceal the number's identity. The records further revealed that an unconcealed fourth call was made from [Fulton's] phone at 11:34 p.m., and that a return call was made two minutes later.

On August 13, 2010, Detectives Rossiter and Nordo interviewed [Fulton], who confirmed that the 267–271–6664 number belonged to him. [Fulton] claimed that his cousin, Shaku Maven, called the decedent from his phone on the night of the murder. At trial, Maven testified that he did not use [Fulton's] phone on the night of the murder, as he was in Darby at that time.

Two days after his interview with detectives, [Fulton] told his cousin Norman Whitest that police knew that he was the last one to call the decedent and the last person in the decedent's car. [Fulton] told Whitest that he called the decedent for a ride to Evans' home and that he was worried that Maven gave detectives his name. At around the same time period, [Fulton] told Evans that he killed the decedent because he needed the money and stole cash from him.

Tazmin Willis, [Fulton's] close friend, was incarcerated at the time of the decedent's murder. Upon his release in the summer of 2010, Willis moved into [Fulton's] home at 604 Emily

Street. There, [Fulton] told Willis that he murdered the decedent because the decedent had disrespected Evans earlier that summer. [Fulton] implored Willis not to tell the decedent's son that [Fulton] murdered his father.

On January 8, 2013, Willis provided a statement about the instant matter to state and federal authorities in exchange for a downward departure on his pending federal robbery and firearms charges. During the interview, Willis repeated [Fulton's] confession and stated that [Fulton] habitually carried a silver Smith & Wesson revolver.

On March 6, 2013, Special Agent Mangold of the Pennsylvania Attorney General's Office interviewed [Fulton], whereupon [Fulton] stated that Evans purchased a Smith & Wesson Model 10 revolver, serial number D424759 on his behalf. [Fulton] told Special Agent Mangold that someone stole the weapon prior to the interview.

(**Commonwealth v. Fulton**, 2019 WL 7219708, unpublished memorandum, at \*\*4-6 (Pa. Super. filed July 23, 2019) (record citations and footnotes omitted).

On November 6, 2015, the jury convicted Fulton of first-degree murder, robbery, firearms not to be carried without a license, carrying a firearm on a public street in Philadelphia and possession of an instrument of crime.[2] The same day, the trial court imposed the mandatory sentence of life without the possibility of parole on the first-degree murder charge, plus an aggregate term of not less than eight nor more than sixteen years on the remaining charges.

---

[2] 18 Pa.C.S. §§ 2502, 3701(a)(1), 6106(a)(1), 6108 and 907(a), respectively.

- 5 -

Fulton filed a direct appeal challenging the sufficiency and weight of the evidence. On December 16, 2016, this Court affirmed the judgment of sentence and the Supreme Court denied further review on May 15, 2017. (**See Commonwealth v. Fulton**, 159 A.3d 1009 (Pa. Super. filed Dec. 16, 2016) (unpublished memorandum), *appeal denied*, 169 A.3d 523 (Pa. 2017)).

Fulton filed a first *pro se* PCRA petition on January 29, 2018. Appointed counsel, Attorney Berardinelli, filed an amended petition on May 8, 2018, in which he argued that trial counsel was ineffective for failing to interview and introduce certain potential witnesses. The Commonwealth filed a motion to dismiss Fulton's PCRA petition. The PCRA court issued notice of its intent to dismiss the petition on June 21, 2018. **See** Pa.R.Crim.P. 907(1). Fulton filed a *pro* se response in which he expressed his intent to proceed *pro se* on appeal. On September 19, 2018, Attorney Berardinelli filed a supplemental PCRA petition in which he advised the court that, upon meeting with Fulton, he determined that additional issues Fulton wanted him to raise lacked merit. On September 26, 2018, Lauren Wimmer, Esquire, entered her appearance on behalf of Fulton, although Attorney Berardinelli had not requested permission to withdraw.

On the morning of September 27, 2018, the PCRA court granted the Commonwealth's motion to dismiss Fulton's PCRA petition. Later that morning, the court held a hearing to address Fulton's earlier request to proceed *pro se* on appeal. Attorney Wimmer appeared at the hearing and

requested a continuance of forty-five days to speak with Fulton and "determine whether further filings need to be made." (*Fulton*, 2019 WL 3307920, at *4). After confirming that Attorney Wimmer was not requesting the PCRA court to reconsider the dismissal, the PCRA court denied the request for a continuance because the petition had already been dismissed, removed Attorney Berardinelli and formally appointed Attorney Wimmer as appellate counsel. (*See id.* at **4-5).

Fulton appealed the dismissal of his first PCRA petition and, in pertinent part, challenged the PCRA court's failure to grant Attorney Wimmer a continuance so she could file another supplemental PCRA petition. Attorney Wimmer claimed that she had identified two ineffective assistance of counsel claims. (*See id.* at *5). In the Superior Court's July 23, 2019 memorandum affirming the first PCRA petition's dismissal, we observed, in pertinent part, that:

> "The decision to grant a continuance is within the sound discretion of the trial court, and we will reverse only if the court has abused its discretion." *Commonwealth v. Paddy*, 609 Pa. 272, 15 A.3d 431, 470 (Pa. 2011) (citations omitted). Initially, the PCRA court had already dismissed Appellant's petition earlier that morning—before Attorney Wimmer orally requested a forty-five day extension of time. *See* N.T. Hr'g, 9/27/18, at 4-6. Regardless, Attorney Wimmer, who was not formally retained as private counsel, declined to argue that the PCRA court should reconsider its dismissal. *See id.* Therefore, under the circumstances, we cannot hold that the PCRA court abused its discretion by denying Attorney Wimmer an extension of time to file an amended petition. *See Paddy,* 15 A.3d at 470.

(*Id.* at *6). The Pennsylvania Supreme Court denied Fulton's petition for allowance of appeal. (*See Commonwealth v. Fulton*, 224 A.3d 363 (Pa. 2020)).

On August 10, 2020, Fulton filed the instant, untimely PCRA petition in which he claimed the applicability of the governmental interference and newly-discovered fact timeliness exceptions on the bases that: (1) the court's failure to allow Attorney Wimmer to amend the first PCRA petition was governmental interference, and (2) the fact that the victim's wallet was missing was a newly-discovered fact that he was unaware of at the time of trial and counsel was ineffective for failing to raise this issue. (*See* Second PCRA Petition, 8/10/20, at 3). He also raised thirteen issues that that can be characterized as: (1) the trial court abused its discretion in failing to order a Pre-Sentence Investigation (PSI) and in denying Attorney Wimmer's request to amend the first PCRA petition; (2) trial counsel was ineffective for failing to (a) file a motion to dismiss on the basis of a speedy trial violation, (b) file motions to suppress, (c) present defense witnesses and (d) raise a *Brady* challenge; and (3) appointed PCRA counsel was ineffective for failing to preserve the claims of trial counsel's ineffectiveness. (*See* PCRA Court Opinion, 10/08/20, at 5-6); (PCRA Petition, 8/10/20, at Attachment).

The PCRA court issued a Rule 907 notice of its intent to dismiss without a hearing on August 21, 2020. On September 8, 2020, Fulton responded, and

on October 8, 2020, the PCRA court filed an opinion and order formally dismissing the petition. Fulton timely appealed.[3, 4]

## II.

## A.

Before considering the merits of Fulton's PCRA petition, we must first determine whether the PCRA court properly found that it was untimely under the PCRA's jurisdictional time-bar. A PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S. § 9545(b)(1). A judgment becomes final at the conclusion of direct review, "including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). Because the timeliness requirements of the PCRA are jurisdictional in nature, courts cannot address the merits of an untimely petition. *See Commonwealth v. Moore*, 247 A.3d 990, 998 (Pa. 2021).

---

[3] The PCRA court did not order Fulton to file a statement of errors, and it did not file a supplemental opinion. *See* Pa.R.A.P. 1925.

[4] "On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." *Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1267 (Pa. 2008), *cert. denied*, 555 U.S. 916 (2008) (citation omitted). "A second or subsequent request for PCRA relief will not be entertained unless the petitioner presents a strong *prima facie* showing that a miscarriage of justice may have occurred." *Id.* (citation omitted).

In this case, Fulton's judgment of sentence became final on August 14, 2017, when his time to file a petition for *writ of certiorari* with the Supreme Court of the United States expired. ***See*** U.S.S.Ct.R. 13(1). This PCRA petition, Fulton's second, was not filed until August 10, 2020, making it facially untimely. To overcome the one-year time bar, "[i]t is [Fulton's] burden to allege and prove that one of the timeliness exceptions applies." ***Abu-Jamal***, ***supra*** at 1268 (citation omitted). The timeliness exceptions include:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Any petition invoking an exception must be filed within one year of the date the claim could have been presented. ***See*** ***id.*** at § 9545(b)(2).

Although Fulton acknowledges the timeliness exceptions in his brief to this Court, he utterly fails to address how they are applicable, instead arguing the merits of his claims. (***See*** Fulton's Brief, at 10-55). However, in his PCRA petition, he claimed the applicability of the governmental interference and newly-discovered facts exceptions. (***See*** PCRA Petition, at 3). Hence,

although he has waived these arguments and failed to meet his burden to plead and prove an exception's applicability, for the sake of a comprehensive review, we will consider their applicability.

In his PCRA petition, Fulton invoked the newly-discovered facts and governmental interference exceptions. To establish governmental interference, the petitioner must "plead[ ] and prov[e] the failure to previously raise the claim was the result of interference by government officials, and the information could not have been discovered earlier with the exercise of due diligence." *Abu-Jamal*, *supra* at 1268. A petitioner satisfies the newly-discovered fact exception through pleading and proving that there were facts that were unknown to him and that he exercised due diligence. *See Commonwealth v. Bennett*, 930 A.2d 1264, 1274 (Pa. 2007). "Due diligence demands that the petitioner take reasonable steps to protect his own interests; a petitioner must explain why he could not have learned the new facts earlier with the exercise of due diligence." *Commonwealth v. Sanchez*, 204 A.3d 524, 526 (Pa. Super. 2019) (citation omitted).

First, Fulton claimed that his failure to raise his claims sooner was the result of governmental interference, namely, the PCRA court's failure to grant retained counsel, Attorney Wimmer, an extension of time to amend his first PCRA petition. (*See* PCRA Petition, at 3). However, as discussed more fully above, in Fulton's appeal of the dismissal of his first PCRA petition, this Court found that his claim that the PCRA court abused its discretion in denying

Attorney Wimmer's request for a continuance lacked merit.[5]   (*See Fulton*,

2019 WL 3307920, at *6).  Hence, Fulton is unable to establish governmental

interference on this basis.  *See Commonwealth v. Howard*, 788 A.2d 351,

355 (Pa. 2002) ("We do not see how a proper court order can, in any fashion,

be perceived as governmental interference.").

Fulton also claimed that he can avail himself of the previously unknown

facts exception on the bases that he "could not have been aware that the

wallet belonging to the victim in the case was missing, or would not have been

presented for trial … where he was charged and convicted of robbery" and that

"counsel failed to present this in trial, or pre-trial motions or on appeal.  PCRA

counsel also being ineffective."  (PCRA Petition, at 3).

The PCRA court explains:

> [Fulton] avers he is entitled to review under the basis of the
> newly-discovered fact exception, on the grounds that he was
> previously unaware that the decedent's wallet had gone missing.
> [Fulton's] claim cannot succeed, as he fails to demonstrate that
> the evidence was previously unknown to him at the time of trial
> and that he raised the instant claim within one year of discovery.
> …   [P]hotographic evidence that the decedent's wallet was
> recovered from the crime scene was shown to both [Fulton] and
> the jury at trial.  [Fulton] fails to prove that the wallet in question
> has since gone missing, or how its alleged, subsequent
> disappearance entitles him to relief.  The claim accordingly fails.

(PCRA Court Opinion, 10/08/20, at 8).  We discern no abuse of discretion.

_____

[5] Moreover, Fulton is due no relief on this claim because it was previously
litigated.  *See* 42 Pa.C.S. § 9543(a)(3), 9544(a)(3).

Fulton admits that the Commonwealth introduced photographs of the victim's wallet at trial in 2014. (*See* Fulton's Brief, at 13); (*see also* Trial Ct. Op., at 8). He provides absolutely no explanation for why he was unable to discover at that time that the wallet itself was allegedly missing or its contents. Indeed, he does not identify when he became aware of the fact that the wallet was allegedly missing or even if it was missing at all. The PCRA court properly found that Fulton failed to establish that this was a fact that was unknown to him to satisfy the newly-discovered facts exception.[6] *See Bennett*, *supra* at 1274; *Sanchez*, *supra* at 526.

**B.**

Finally, we note that none of Fulton's claims could overcome the PCRA time-bar. To the extent that Fulton maintains that he is entitled to relief based on his claims of ineffective assistance of counsel, it is well-settled that framing a petitioner's claim in terms of ineffectiveness will not save an otherwise untimely filed petition from the application of the time restrictions of the PCRA. *See Commonwealth v. Robinson*, 139 A.3d 178, 186 (Pa. 2016). Thus,

---

[6] We reiterate that, in any event, the wallet was not material to the case where the robbery count was for Fulton's theft of heroin from the victim. Moreover, we agree with the PCRA court that Fulton is mistaken in his belief that the robbery was necessary for his first-degree murder conviction. (*See* PCRA Ct. Op., at 15).

Fulton's ineffective assistance of counsel claims cannot serve as a basis for circumventing the PCRA's timeliness requirements.[7]

Neither could Fulton's petition be saved by his **Brady** claim.[8]  While a **Brady** claim may fall within the governmental interference exception, it must be raised within one year of the date it could have been presented.  **See Commonwealth v. Breakiron**, 781 A.2d 94, 98 (Pa. 2001).  For a **Brady** claim to fall under the governmental interference exception, the petitioner must show that "the facts upon which the **Brady** claim is predicated were not previously known to [him] and could not have been ascertained through due diligence."  **Abu-Jamal**, **supra** at 1268 (citation omitted).  The governmental interference exception "does not require any merits analysis of the underlying [**Brady**] claim.  Rather, the exception merely requires that the 'facts' upon which such a claim is predicated must not have been known to appellant, nor could they have been ascertained by due diligence."  **Id.** (citation omitted).

---

[7] Any claims of trial or appellate counsel ineffectiveness are also waived for his failure to raise them in his first PCRA petition.  **See** 42 Pa.C.S. §§ 9543(a)(3), 9544(b).

[8] Under **Brady** and subsequent decisional law, a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an impeachment nature.  **Commonwealth v. Roney**, 79 A.3d 595, 607 (Pa. 2013) (citation omitted).  While we decline to fully review the merits of Fulton's **Brady** claim, it appears that the wallet and its contents were not material where the Commonwealth's theory was that Fulton stole decedent's heroin, not his money.

As stated previously, Fulton is unable to plead and prove the underlying facts of his **Brady** claim, *i.e.*, that the victim's wallet was missing, the Commonwealth failed to disclose this fact and that he could not have ascertained this fact with the exercise of due diligence. Hence, even if he had pleaded the governmental interference timeliness exception based on **Brady** in this Court, it would have failed.[9] **See Abu-Jamal**, **supra** at 1268.[10]

Finally, Fulton does not argue that the trial court's failure to order a PSI or state its reasons for imposing his sentence formed any timeliness exception. (**See** Fulton's Brief, at 49-55). However, even if it could, the underlying argument is waived for his failure to raise it in his direct appeal or prior PCRA proceeding. **See Commonwealth v. Jordan**, 182 A.3d 1046, 1050 (Pa. Super. 2018); 42 Pa.C.S. §§ 9543(a)(3), 9544(b). Furthermore, the argument would lack merit because he was sentenced for first-degree murder, which carries a mandatory sentence of life imprisonment; therefore, as a practical matter, a PSI would not have affected the sentence.

---

[9] Fulton's underlying **Brady** claim also is waived for his failure to raise it on either direct appeal or in his first PCRA petition. **See** 42 Pa.C.S. §§ 9543(a)(3), 9544(b).

[10] Fulton also appears to claim that the Commonwealth committed a **Brady** violation or prosecutorial misconduct by failing to disclose that it had made a deal with one of its key witnesses. (**See** Fulton's Brief, at 44-49). Again, this argument fails to satisfy Fulton's burden to plead and prove a timeliness exception because he does not identify when he allegedly became aware of this fact or why he could not have discovered it sooner in the exercise of due diligence.

Accordingly, for all these reasons, we conclude that the record supports the PCRA court's dismissal of Fulton's second PCRA petition where he failed to plead and prove the applicability of an exception to the PCRA's time-bar. ***See Abu-Jamal***, ***supra*** at 1267.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/06/2022